## CONTRACT PROPOSITIONS OF MARINE INSURANCE.

THE MARINE INSURANCE CO., LIMITED, OF LONDON, A CORPORATION, v. THE WALSH-UPSTILL COAL CO., A CORPORATION.

Decided, June 16, 1903—68 Ohio State, p. 469.

*Marine Insurance—Policy Contains "Contract Proposition"—Insurance Fails to Cover Cargoes Shipped by Defendant—Unless Defendant is Owner of Property or Agent for Shipper Having Interest.*

Where, by what is denominated a "contract proposition," request is made of an insurance company for a policy of marine insurance in which "contract proposition" it is stated: "Insurance is wanted by the Walsh-Upstill Coal Company covering all shipments of the folllowing description of articles, viz., sundry coal cargoes, belonging to them and as agents, at risk," etc., a policy of insurance issued upon such application which states that insurance is made "as per said contract," will apply to and cover only such cargoes shipped by the Walsh-Upstill Coal Co. as shall belong to it as owner and to such as shall be shipped by it as agent in which it shall have some pecuniary interest at risk.

Error to the Circuit Court of Cuyahoga County.

The defendant in error, the Walsh-Upstill Coal Co., a corporation, brought suit in the Court of Common Pleas of Cuyahoga County, against the plaintiff in error, the Marine Insurance Co., Limited, of London, England, on a policy of insurance issued to it by said Marine Insurance Co.

The Walsh-Upstill Coal Co., the nominal plaintiff in said suit, brought the action, as averred in its petition, for the use of the R. P. Elmore Co., a corporation of Milwaukee, Wisconsin. In its petition the Walsh-Upstill Coal Co. alleged that:

"On April 26, 1897, the defendant, in consideration of the agreed premiums to be paid it by plaintiff, duly issued and deliv-

ered to plaintiff an open cargo policy of insurance, with certain contract propositions thereto attached, a copy of which is hereto attached, marked 'Exhibit A.' In and by said policy defendant insured plaintiff on all shipments of coal cargoes belonging to plaintiff, or represented by it as agent, provided the shipments thereof be reported to defendant's Cleveland agent, by plaintiff, as soon as plaintiff should receive advice of such shipment; and such insurance, by the terms of said policy, was against the adventures and perils of the lakes, rivers, canals, railroads, fires, jettisons, and all other perils and misfortunes that have or shall come to the hurt, detriment or damage of said property, or any part thereof. In and by said policy defendant insured all such shipments of coal made from and after April 1, 1897, to and including December 1, 1897; and said policy provided that the risk thereunder upon each such shipment should begin from and immediately following the loading thereof at the port or place named in the indorsement, and should continue and endure until the same should arrive and be safely landed at the port of destination, and not exceed forty-eight hours from the time of arrival.

"On November 29, 1897, plaintiff, acting as agent of the R. P. Elmore Co., of Milwaukee, shipped a cargo of 1,836 tons 900 pounds of coal, at Cleveland, Ohio, on the steam propeller *Egyptian*, consigned to the R. P. Elmore Co., Milwaukee, Wisconsin; and said steam propeller sailed from Cleveland on said voyage, November 29, 1897. * * *

"Said steamer *Egyptian* while making said voyage caught fire and burned to the water's edge, a short distance above Thunder Bay Island, on Lake Huron, at a place covered by said insurance, on the night of December 1, 1897, the hull of said steamer filled with water, and such portions thereof, and of said cargo as were not consumed by said fire, sank to the bottom of Lake Huron in very deep water; whereby said cargo became a total loss."

There was the further averment of due proof of loss and of the refusal of defendant to pay, and the allegation that there was due plaintiff from the defendant by reason of the premises, the sum of $3,990.72, with interest thereon from January 18, 1898, and a prayer for judgment for that sum. The contract proposition attached to said policy of insurance was in the words and figures following, to-wit:

### "CONTRACT PROPOSITION.

"To The Marine Insurance Co., Limited, of London, England: Insurance is wanted by the Walsh-Upstill Coal Co. covering all shipments of the following description or articles, viz., sundry coal cargoes, belonging to them and as agents, at risk, and reported as herein stipulated, from April 1, 1897, until December 1, 1897,

at and from lake ports, by the following routes, modes and conveyance and rates of premium, viz.: From Lake Erie to Detroit and St. Clair River, and to Lakes Huron, Ontario, Michigan and Superior, 15 cents per $100, on standard sail and steam vessels not classing below A2½. ·

"B1 vessels, 22½ cents per $100.

"B1½ vessels, 30 cents per $100 to September 1st; 40 cents per $100 to October 1st; 60 cents per $100 to November 1st; 75 cents per $100 to November 30th.

Subject to the conditions of cargo policy No.................
of.....................................Insurance Co., Ltd.,
of .............................. All shipments attaching under said policy shall be valued at invoice cost, with ten (10) per cent. added, unless otherwise agreed upon prior to shipment; each shipment to be reported to the agent of the said insurance company, at Cleveland, Ohio, as soon as receiving invoices. Shipments on any one vessel limited to $..............., premiums payable monthly.

"Dated, Cleveland, Ohio, April 1, 1897.

"THE WALSH-UPSTILL COAL CO.

"P. P. WALSH, General Manager, Applicant.

"Accepted ..........................189.....

"HUTCHINSON & Co., Agents.

"This contract is not binding until approved by C. A. Macdonald & Co., general agents."

The Marine Insurance Co. by way of answer alleged:

"That under and by the provisions of said contract so attached to said policy, as aforesaid, it was provided that only coal cargoes belonging to the plaintiff and as agents at risk and reported as therein stipulated, should be covered by said policy. And it was provided in said policy that the defendant made insurance as per said contract, dated April 1, 1897, on account of the Walsh-Upstill Coal Co. Defendant says that these stipulations in the policy were material to the risk taken by it in issuing said policy of insurance, and binding upon plaintiff.

"Further answering, it says that the plaintiff did not, at the time of shipment, or any other time, have any ownership or interest in two hundred and twenty-three (223) tons one hundred (100) pounds of the coal shipped upon said steamer; that it sold to the R. P. Elmore Co. one thousand, seven hundred and thirteen (1,713) tons eight hundred (800) pounds of the coal so shipped, delivered free on board vessel at Cleveland, and that when said coal was delivered upon said vessel it became and was the property of the R. P. Elmore Co., and that the plaintiff had no ownership or interest therein. That all of said coal was shipped as belonging to plaintiff. That no part of said coal so shipped was at the

risk of damage or loss to the plaintiff; that plaintiff had no insurable interest in any of said coal at time of shipment or loss, and that plaintiff, with intent to deceive defendant, sought to obtain insurance upon said shipment by representing to the agents of the defendant that said coal belonged to the plaintiff, and was shipped on its account."

Replying to these averments of defendant's answer the plaintiff "denies the allegation that it did not at any time have any interest in 223 tons 100 pounds of the coal shipped upon the said steamer *Egyptian;* denies the allegation that plaintiff had no interest in the 1,713 tons 800 pounds of said coal which it sold to the R. P. Elmore Co.; denies the allegation that no part of said coal so shipped was at the risk of damage or loss to the plaintiff; denies the allegation that plaintiff had no insurable interest in any of said coal, and that plaintiff, with intent to deceive defendant, sought to obtain insurance upon said shipment by representing to the agents of defendant that said coal belonged to the plaintiff and was shipped on its account; and denies the allegation that said policy of insurance never attached to said cargo of coal and said cargo was not covered by said policy."

Numerous other averments and denials are made in the pleadings, but they are not material to a determination of the question here presented, and need not be stated. In the court of common pleas, the Walsh-Upstill Coal Co. recovered a judgment for the full amount claimed, to-wit, $4,633. This judgment was affirmed by the circuit court, and it is to reverse this judgment of affirmance that the present proceeding in error is prosecuted by the Marine Insurance Co.

*Goulder, Holding & Masten,* for plaintiff in error.

*Roger M. Lee,* for defendant in error.

CREW, J.; SPEAR, SHAUCK and PRICE, JJ., concur.

Whether the judgment of the circuit court was erroneous is in this case to be determined from, and is dependent upon, the interpretation and effect proper to be given to the contract of insurance on which this suit was brought. The facts of this case are not in dispute, and if as contended by the defendant in error, the contract in suit is, because of the language therein employed, equally comprehensive with and in legal effect the equivalent of an open cargo policy containing the phrase, "for themselves or whom it may

concern," whereby the Walsh-Upstill Co. was authorized to cover and insure either cargoes owned by it or cargoes shipped and insured by it as agent for the consignee but in which it had neither ownership nor interest, then the judgment of the circuit court was right. But if on the other hand, the terms and provisions of said policy when rightly construed and interpreted are such as to limit its application to cargoes of coal belonging to the Walsh-Upstill Co., or to cargoes shipped by said company in which it had and held some pecuniary interest as owner or agent, then and in that event, the judgment of the circuit court was erroneous. The single question presented here for determination is: Was this cargo of coal shipped by the Walsh-Upstill Co. to the R. P. Elmore Co. of Milwaukee, Wisconsin, covered by the policy of insurance on which this suit is brought? The answer must be found in the proper interpretation of the contract or policy itself.

It is conceded in this case that the Walsh-Upstill Coal Co., at the time it applied for insurance on this cargo of coal, was neither the owner of said cargo, nor had it any interest in the same as agent or otherwise. But it is claimed by defendant in error that although it had no ownership in the coal at the time of procuring the insurance, that it was the agent of the Elmore Co. in securing the insurance and shipping of coal and that by the terms of its contract under which the policy was issued, such policy covered as well coal shipped by it as agent as that shipped by it as owner and that the words of the contract "covering all shipments of the following description of articles, viz., sundry coal cargoes belonging to them and as agents, at risk," etc., is in effect a contract and agreement to insure such cargoes of coal as should be shipped by it as owner, and also such as should be shipped by it as agent, although when shipped as agent it might be without interest in the cargo shipped. If this provision in said contract is the equivalent of, and carries with it the same legal interpretation as the phrase "for themselves or whom it may concern," then under this policy the Walsh-Upstill Co. was, as claimed by defendant in error, authorized to cover not only such cargoes as were owned by it, but all cargoes shipped and insured by it as agent, by whomsoever owned. Such, we think, was not the intention of the parties to this contract, nor is such the effect and meaning proper to be given to the terms and provisions of the contract itself when rightly construed and interpreted. That it was not the purpose of the Walsh-

Upstill Co. to procure a general authority to solicit and take risks or to cover by insurance all cargoes of coal that might be shipped by it whether interested therein or not, would seem to be evidenced by the language of its application to said insurance company for insurance. This application, the so-called "contract proposition," recites that: "Insurance is wanted by the Walsh-Upstill Coal Co. covering all shipments of the following description of articles, viz., sundry coal cargoes belonging to them and as agents, at risk," etc. And the policy issued on this application by the insurance company contained the recital that it was issued "on account of the Walsh-Upstill Coal Co. as per contract dated April 1, 1897," etc. By this application insurance was requested by the Walsh-Upstill Co. only upon "cargoes belonging to them and as agents, at risk," and the policy issued covered only such cargoes. Insurance was not asked by the Walsh-Upstill Co., "for whom it might concern," nor was it asked for or on behalf of the R. P. Elmore Co., who were the owners of this cargo and who alone were at risk in case of loss, but it was asked and obtained for and on account of the Walsh-Upstill Co., on cargoes belonging to them and as agents, at risk. The parties to this contract of insurance are chargeable with knowledge of the law governing this character of insurance and it is, we think, under the facts of this case, fair to assume they were not without knowledge that in marine insurance it is a matter of common usage to issue policies "for whom it may concern" upon application made for that purpose. If it had been the purpose of the Walsh-Upstill Co. to obtain such a policy or to procure authority to act as agent for the Marine Insurance Co. in soliciting and taking risks, and if it had been the purpose of the insurance company to constitute said Walsh-Upstill Co. its agent for that purpose, we may reasonably assume that the application and policy would have taken some such form. But the Walsh-Upstill Co. did not apply for such a policy nor did the insurance company issue such an one, unless the words, "belonging to them and as agents," in this policy carry the same legal interpretation as the phrase "for whom it may concern." The contract of marine insurance in its essential nature and in all its incidents is purely a contract of indemnity, hence ordinarily an insurable interest of appreciable value on the part of the assured in the subject of insurance is of the very essence of the right to recover upon such contract; if there is no interest there can be no loss, and if there is no risk of loss

on the part of the assured there can be no valid contract of indemnity. This policy of insurance is not subject to the same construction and interpretation that might be given it, if the provision in question were made to read "for whom it may concern," or if the policy were made to run to "A. B., as agent," or "to C. & L. for the owners," as was the form of policy in some of the cases cited by counsel for defendant in error; for in such case the policy itself would, on its face, clearly indicate and show that the person intended to be insured thereby was a person other than the person making the application and to whom and in whose name the policy issued. But the contract we are considering was not of that character, but was by its terms a personal contract between the Walsh-Upstill Co. and the insurance company whereby the Walsh-Upstill Co. sought and obtained insurance for itself and on its own account, and not generally "for whom it may concern." That the words "at risk" in this contract are there for some purpose and have some meaning must be presumed, and in the construction of said contract these words may not be omitted or disregarded nor may other words which change or enlarge the meaning of said contract, or change the intendment of the parties thereto, be substituted in their stead. Looking to their place and position in this contract, and taken in connection with the other language and provisions thereof, we think these words "at risk" must be held to qualify, and were so intended, the words which immediately precede them and in connection with which they are used, viz., the words "and as agents," and so construed they are a limitation on the authority of the Walsh-Upstill Co., and restrict the application of this policy of insurance to such cargoes as belong to said Walsh-Upstill Co. as owner, or such as it has some interest and risk in as agent; and such we think was the intention of the parties to this contract. The Walsh-Upstill Co. was a coal company doing business in Cleveland, Ohio, and engaged in the business of selling and shipping coal. The coal sold by it was sometimes delivered "free on board" vessels at Cleveland or other port of shipment and sometimes delivery was to be made at the port of destination, so that it might very well be in certain cases that the Walsh-Upstill Co. as consignor might have an insurable interest in a cargo of coal, the title to which had by delivery to the carrier passed to the consignee. And to the extent of such

interest it might have insurance under this contract and policy.

The case of *Insurance Co.* v. *Wilson,* 6 Ohio St., 553, cited and relied upon by defendant in error, is clearly distinguishable from this case. In that case Wilson & Co. were insurance brokers, and were acting for the Protection Insurance Co. The syllabus in that case is as follows:

"Insurance brokers, holding an open policy of insurance for themselves and whom it may concern, may, in case of damage to property covered by their policy, maintain, in their names, an action for the use of the owners, although the latter are not named in the policy, if it sufficiently appear that the insurance was procured for their benefit."

Bowen, J., announcing the opinion in that case, speaking of the authority of Wilson & Co., and the character of their policy, said:

"They had been agents intrusted with the business of taking risks upon property against the perils of transportation, of fire and of thieves. For the purpose of executing this agency they received from the insurance company an open policy 'to themselves or whom it might concern,' etc. So that in this case the policy itself was one 'for whom it might concern' and clearly showed that Wilson & Co., in whose name it issued, were not required to have any beneficial interest in property that might be covered by it."

While the policy issued to the Walsh-Upstill Co. covered only property belonging to it; or in which as agent it had some risk. We are of opinion that under the admitted facts of this case, the cargo of coal lost was not covered by the policy of insurance on which this suit was brought, and therefore that no recovery can be had on said policy because of the loss of said cargo.

*Judgment of the circuit court reversed and judgment for plaintiff in error.*


DAVIS, J.; BURKET, C. J., concurs.

I concur in the syllabus and in the judgment; but I do not concur in all of the reasoning by which the conclusion is reached in the opinion. The question to be determined in this law suit is who is insured, not what is insured. The words "at risk" define the property to be insured and not the person, and they are custom-

arily used for that purpose. I regard it as both bad law and bad grammar to construe this phrase as qualifying the term "agents" instead of "cargoes." I therefore, for the purposes of this controversy, construe only so much of the application, or, as it is here called, the contract proposition, as precedes and includes the word "agents." It recites that insurance is wanted for the Walsh-Upstill Co. *Expressio unius est exclusio alterius.* Therefore insurance was not asked for nor issued for anybody else. It was requested and issued upon cargoes "at risk," etc., *belonging* to the Walsh-Upstill Co. as principal "or as agents"; but when it is a conceded fact that the particular cargo in question did not *belong* to the Walsh-Upstill Co. as agents or otherwise, it seems to me to be a very violent construction of the contract which would permit them to insure the cargo which did *not* belong to them for the use and benefit of strangers to the contract to whom it belong. And it would in my opinion be a still more violent strain upon the law to allow such owners to recover as beneficiaries in the name of the Walsh-Upstill Co. Such procedure would be essentially a fraud upon the insurance company, and is not justified by any fair interpretation of the language of the contract proposition.