GREAT AMERICAN INSURANCE COMPANY, PLAINTIFF-APPELLANT, *v.* CURL, DEFENDANT-APPELLEE.

Ohio Appeals, Second District, Montgomery County.

No. 2609. Decided June 19, 1961.

*Messrs. Curtner, Brenton & Selva,* by *Mr. Clifton E. Plattenburg, Jr.,* of counsel, for plaintiff-appellant.
*Messrs. Landis, Ferguson, Bieser & Greer,* by *Mr. Douglas K. Ferguson,* of counsel, for defendant-appellee.

KERNS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Montgomery County.

On September 24, 1959, the defendant-appellee, Stella Mae Curl, who resided with her son-in-law and daughter, Phillip and Latitia Sparaco, ran her automobile into their garage caus-

ing damages in the amount of $1,044.00. The Sparacos' property was insured by the plaintiff-appellant, Great American Insurance Company, under a "homeowners insurance policy." Under the provisions of the policy, the plaintiff-appellant paid the claim in the amount of $1,044.00 and took a subrogation receipt in its favor to all rights, claims and interests which the Sparacos may have had against the person liable for the damages involved.

Thereafter, the plaintiff-appellant, as subrogee of Phillip and Latitia Sparaco, instituted an action claiming damages due to the negligence of the defendant-appellee. On April 26, 1960, an answer was filed, one of the defenses of which was that the defendant-appellee was an insured under the policy of insurance which covered the loss.

On June 28, 1960, the plaintiff-appellant filed a motion for a summary judgment in the action seeking a determination of whether the defendant-appellee was an insured under the homeowners insurance policy and, if so, whether this was a defense to the action by the subrogee under the policy. The judgment of the trial court was in favor of the defendant.

The general conditions of the insurance contract between plaintiff-appellant and the Sparacos define the term "insured" as follows:

"Insured: The unqualified word 'Insured' includes (1) the Named Insured, and (2) if residents of his household, his spouse, *the relatives of either,* and any other person under the age of 21 in the case of an Insured, * * *." (Emphasis ours.)

The defendant-appellee is clearly an insured within the scope of this definition.

But the plaintiff-appellant contends that the defendant-appellee could not be an insured because she has no insurable interest in the Sparacos' property.

The rule is well established that an insurable interest in property insured is necessary to support the validity of a contract of insurance on such property. 30 Ohio Jurisprudence (2d), 305, Section 305. However, we cannot agree with the plaintiff-appellant that this rule has any application to the facts of this case. Here the defendant-appellee made no attempt to insure property in which she had no insurable interest. She made no contract. And she stood to gain nothing

by the loss or destruction of the property which was insured by her daughter and son-in-law. None of the evils which the rule relied upon by the plaintiff-appellant was designed to guard against are present in this case. The Sparacos had the insurable interest and undoubtedly paid premiums geared to the protection afforded by the policy. If that protection is extended by a provision including relatives residing in the same household within the definition of the term "insured," we are aware of no rule of law which will invalidate the provision.

Suppose, for example, that the defendant-appellee in this case was a dependent son of the Sparacos. He too would be liable for his torts, and possibly have no insurable interest in his parents' property. Could he be sued by way of subrogation and thus possibly place the parents in the position of having to return by a circuitous route the same money originally paid by the company on the claim? In our opinion, the policy insures against any such possibilities.

Surely the named insureds, Phillip F. and Latitia M. Sparaco, did not pay the insurer a premium for the purpose of having it collect their damages from their mother who lived with them.

Furthermore, the doctrine of subrogation is based upon principles of equity and justice, and in effectuating a fair resolution of the rights of the parties, the plaintiff-appellant may not use subrogation as a means of attacking the validity of a provision of the insurance contract which it drafted, and which specifically includes protection for relatives living in the same household. Any such provision must be construed liberally in favor of the insured. 30 Ohio Jurisprudence (2d), 225, Sections 215, et seq.

The plaintiff-appellant also argues in support of its assignment of error that the special exclusions applicable to the liability provisions of the policy relieve it from any liability to reimburse the insured for damages to insured property caused by property in the physical control of the insured. This provision, however, by its own terms, applies exclusively to the liability portion of the policy (Section II), and therefore has no application to that portion of the policy (Section I) insuring against certain specified perils, including vehicles. If said

exclusions did apply, the named insured as well as the defendant-appellee would stand in the same position and would be excluded from coverage under the policy for damages from vehicles under their control. This being so, the plaintiff-appellant, to be consistent, would have to admit therefore that it paid the named insured in the first instance as a volunteer, in which case it would have no standing as a subrogee.

With further reference to the contention of the plaintiff-appellant, it should be noted that the insurance contract under consideration is the so-called "broad form" homeowners policy which does not exclude loss by any vehicle owned or operated by an occupant of the premises under Section I of its policy, as was the case here, as distinguished from the "standard" homeowners policy which normally does exclude the insurer specifically from liability for any such loss.

Accordingly, we find no merit in the assigned error.

The judgment will be affirmed.

CRAWFORD, P. J., concurs.

SHERER, J., dissenting. "On September 24, 1959, Phillip and Latitia Sparaco were the title owners to the improved real property located at 7421 Mad River Road, Dayton, Ohio. Mrs. Sparaco's mother, the defendant-appellee Stella Mae Curl, resided with her son-in-law and daughter at 7421 Mad River Road, Dayton, Ohio. On that date Mrs. Curl was the owner of a 1950 Lincoln automobile which she operated into a portion of the garage of the property located at 7421 Mad River Road, Dayton, Ohio, damaging it in the amount of $1,044.00. The plaintiff-appellant Great American Insurance Company carried a policy of "homeowners insurance" on this improved real property, being policy No. 1 58 83 87, a copy of which is hereto attached and marked Exhibit 'A,' and under the provision of this policy paid to the named insureds, Phillip and Latitia Sparaco, the amount of $1,044.00. Also under the provisions of this policy the named insureds executed a subrogation receipt in favor of the Great American Insurance Company subrogating the plaintiff-appellant to all of their rights, claims and interests against any person who may be liable for the damages involved.

520

"On February 2, 1959, an action was filed in the Common Pleas Court of Montgomery County, Ohio, being Case No. 116820, by the plaintiff-appellant Great American Insurance Company, as subrogee of Phillip and Latitia Sparaco against defendant-appellee Stella Mae Curl to recoup its damages as a result of the negligence of defendant-appellee Stella Mae Curl. On April 26, 1960, an answer was filed by the defendant-appellee, one of the defenses of which was that the defendant-appellee Stella Mae Curl was an insured under the 'homeowners policy' of insurance under which the loss was paid and by the terms of which the plaintiff-appellant Great American Insurance Company became subrogated in this action.

"On June 28, 1960, plaintiff-appellant Great American Insurance Company filed a motion for summary judgment in said action seeking a determination by the Court of whether the defendant-appellee Stella Mae Curl was an insured under the said insurance policy, and, if so, whether this fact was a defense of an action by a subrogee under the same policy. On September 7, 1960, the Court rendered a decision granting final judgment in favor of the defendant-appellee Stella Mae Curl."

The parties hereto agree on the above statement of facts.

Plaintiff-appellant, Great American Insurance Company, will be referred to hereafter as plaintiff, and defendant-appellee, Stella Mae Curl, will be referred to hereafter as defendant.

The only error assigned is that the judgment of the common pleas court was contrary to law.

The question we are asked to determine is whether an insurer under a "Homeowner's" policy may recover as subrogee payment for property damage suffered by the owner of the insured property, from the person whose negligent act caused the damage, where the policy also defines the tort feasor as an insured.

It is argued by defendant that she is an insured under the terms of the policy and that plaintiff, as subrogee, may not bring an action against her for damage to the property which she has caused. Defendant admits the general proposition that "A subrogee stands in the same position as its subrogor, but has no greater rights than the subrogor." But defendant argues that plaintiff's rights as a subrogee are not as great as those of the subrogor because by its contract it has limited

its rights as to defendant by its definition of defendant as an insured in the policy. Defendant cites as authority the case of *Builders and Mfrs. Mutual Casualty Co.* v. *Preferred Automobile Ins. Co.*, 118 Federal Reporter (2d), 118, where the court said, at pages 121 and 122,

"The rule that an insurer who has paid the loss resulting from a peril insured against may be subrogated to all the claims which the insured may have against any person by whose negligence the injury was caused does not apply in a case where the injury was caused by the negligence of the insured himself."

Plaintiff contends that defendant is not an insured under the terms of the policy insofar as damage to the dwelling is concerned. Plaintiff maintains that it did not agree to insure or indemnify defendant for damage to the dwelling caused by her negligence or to hold her harmless for damage to insured property because that would be impossible under the law because she had no insurable interest therein.

In support of this argument, plaintiff points to item (f) under Special Exclusions enumerated in the policy. Under Special Exclusion, we find this language,

"Section II of this policy does not apply (f) under Insuring Agreement 1 (a) of Coverage E, to property damage to property used by, rented to, or in the care, custody or control of the Insured, or property as to which the Insured for any purpose is exercising physical control."

In 1 (2) of Coverage E in Section II of the policy, which is the Liability portion thereof, we find this agreement of plaintiff,

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, and as damages to or destruction of property, including the loss of use thereof."

It is further argued that plaintiff agreed under Coverage E to indemnify the Named Insured and those persons set out in Section 2 (a) of the General Conditions (defendant) also defined as Insureds, against payment of damages for their negligence as set out in the provisions of Coverage E and that under the provisions of Coverage E, plaintiff would have been

obliged to pay out on behalf of defendant remuneration for the damage done by her negligence to the dwelling were it not for the provision (f) under Special Exclusions. Plaintiff then goes on to argue that the fact that defendant is an insured under the provisions of this coverage does not make her an insured insofar as the loss to the garage is concerned so as to bar plaintiff's right to maintain this action. The plaintiff points out that the loss was not paid under Coverage E but under Coverage A and B of Section 1 of the Policy.

The policy is in two parts. In Section 1 plaintiff agrees to pay the named insureds, Phillip and Latitia Sparaco, for loss caused by damage to the buildings described in Coverage A and B and agrees to pay them any necessary increase in their cost of living which might result from such a loss. The policy does not insure defendant with respect to either of these items of damage or loss.

Section II insures against damage caused to persons or property by the negligence of those insured with the limitations imposed by (f) under Special Exclusions.

The General Conditions of the Policy of Insurance out of which this dispute arose provide that where the unqualified word "Insured" appears in the policy, it includes,

"(1) The Named Insured and (2) if residents of his household, his spouse, the relatives of either."

Under the Provisions Applicable to Section 1 of the Policy under the heading Description of Property and Interests Covered, Coverage A and B refer to a dwelling and appurtenant private structures. Coverage C refers to unscheduled personal property on the premises usual or incidental to the occupancy of the premises as a dwelling, owned, worn or used, by an Insured, while on the premises. Coverage D refers to a necessary increase in living expense resulting from loss by a peril insured against to the property covered thereunder incurred by the Named Insured to continue as nearly as practicable the normal standard of living of the Named Insured's household for the applicable period described in the policy.

Under the hearing, Perils Insured Against, the policy insures under Section I against direct loss to the property covered (and additional living expense resulting from such loss) by the following perils: (8) vehicles.

Thus, by the General Provisions of the Policy defendant is an Insured. Under Coverage C in Section I of the Policy defendant is an insured by reason of the fact that the policy covers loss of or damage to personal property on the premises usual or incidental to the occupancy of the premises as a dwelling, owned, worn or used by an Insured. This could include clothing, jewelry, bed room or other furniture, personal effects or any other personal property owned by defendant. Under Section II, Item 1, Coverage E (a) of the Policy, which is the liability portion thereof, defendant is an Insured because thereunder plaintiff is bound to pay for her negligent acts which cause damage or injury to other persons or to their property, limited by (f) under Special Exclusions to exclude property damage to property used by, rented to, or in the care, custody or control of the Insured, or property as to which the Insured for any purpose is exercising physical control.

This Policy constitutes an agreement between plaintiff and the Named Insureds for the benefit of defendant as provided in Coverage C in Section I and as provided in Coverage E (a) in Section II.

Under the terms of the Policy plaintiff has (1) agreed to pay defendant any loss she might suffer as provided in Section 1, Coverage C, of the Policy relating to personal property and has (2) agreed to pay on her behalf all sums which she shall become legally obligated to pay as damages because of bodily injury or property damage caused by her negligence as provided in Section II, Coverage E of the Policy, excepting as limited by (f) under Special Exclusions.

Plaintiff paid its subrogors for a loss suffered by them as described by Section 1 of the Policy under Coverage A and Coverage B because of peril 8 under Perils Insured Against. Their loss was occasioned by damage to a garage. Defendant could not be an Insured with respect to the property damaged unless she had an insurable interest therein.

"A person usually has an insurable interest in the subject matter insured where he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against." Vol. 44, Corpus Juris Secundum, page 870.

524

In Ohio Jurisprudence (2d), Vol. 30, Page 302, it is stated:
"The Ohio courts adhere to the now almost universally accepted rule, based upon general principles of public policy or similar grounds, that an insurable interest is necessary to the validity of a policy, no matter what may be the subject matter, and that if no insurable interest exists, the contract is void. This rule is in accord with the view that wager policies are invalid. Obviously, in the case of property, an insurable interest therein is essential to the validity of insurance thereof, since, as property insurance is based entirely upon the principle of indemnity, if there is no insurable interest, there can be no loss, and the insurance would amount to a wager, which public policy condemns. So, too, one taking out a policy on the life of another, as distinguished from one insuring his own life for the benefit of another, must have an insurable interest in the life insured. But the necessity of the existence of an insurable interest does not mean that it must be specifically referred to in the policy; if there is in fact such an interest, it is sufficient if the subject matter of insurance and the nature of the risk are set forth in the policy, without any representation of the nature or character of the interest for which the insurance is intended as a protection."

10 Ohio, 233, *Vairin* v. *Canal Ins. Co.* In the case of *Marine Ins. Co.* v. *Walsh-Upstill Coal Co.*, 68 Ohio St., 469, the Supreme Court said, at page 484:

"The contract of Marine Insurance in its essential nature and in all its incidents is purely a contract of indemnity, hence ordinarily an insurable interest of appreciable value on the part of the assured in the subject of insurance is the very essence of the right to recover upon such contract; if there is no interest there can be no loss, and if there is no risk of loss on the part of the assured there can be no valid contract of indemnity."

On the subject of Insurable Interest is found this statement in Couch on Insurance, (2d), Vol. 3, page 89:

"The right or interest must be such as the law will recognize and protect, that is, of such a character that the destruction of the property will have a direct, and not a mere remote or consequential, effect upon it."

In the case of *Commonwealth Ins. Co. of N. Y.* v. *Lacy*, decided by the Court of Civil Appeals of Texas, 214 S. W. (2d),

page 899, Miss Louie Lacy sued the insurance company to recover the value of certain jewelry under the terms of a Jewelry Floater Policy. The policy insured "Mrs. Louie Lacy Connell, and members of his or her family of the same domicile, hereinafter called insured, * * * as per schedule attached, being the property of the insured, against all risk of loss or damage, * * *." The name Mrs. Louie Lacy Connell was typed on the policy and the other words quoted above were printed in the policy. While married to Louie Lacy Connell, Mr. Connell took the jewelry to a jeweler and had zircons substituted for the diamonds, therein, which was not discovered until after the Connells were divorced.

It was held by the court that:

"3. Where jewelry floater policy named only wife as insured, and only property listed in schedule was wife's own separate property, provisions in policy purporting to insure wife and 'members of her family' did not make husband an insured, so as to preclude wife's recovery on the policy for loss occasioned by husband's taking diamonds out of the jewelry and substituting zircons.

4. Where insurer sought to defeat claim on jewelry floater policy for loss of diamonds on ground that diamonds were taken by named assured's husband, and that he was an insured under the policy and had an insurable interest in the property covered, named insured had right to establish that she was the only insured under the policy and that her husband had no insurable interest in the property. Vernon's Ann. Civ. St. Art. 4614."

On the subject of insurance interests Wood on Insurance says:

"It is not necessary that the assured should have either a legal or equitable interest, or, indeed, any property interest, in the subject-matter insured. It is enough if he holds such a relation to the property that its destruction by the peril insured against involves pecuniary loss to him or to those for whom he acts." 1 Wood, Insurance, Section 281, page 645.

In the case of *Kludt* v. *German Mutual Fire Ins. Co.*, 140 N. W., 321, a case in which a husband had procured a fire insurance policy covering property owned solely by the wife, the

court adopted the doctrine set forth in the case of *Horsch* v. *Dwelling H. Ins. Co.*, 77 Wis., 4, 45 N. W., 945, at page 946:

"The actual possession and beneficial use of the farm were in the plaintiff, with the full consent of the wife, at the time the policy was issued as well as at the time of the loss. There can be no doubt, therefore, but that the plaintiff had a pecuniary and valuable interest in the property insured and destroyed, and therefore an insurable interest. The possession and use of the house and barns was of the utmost importance to him in providing a support for himself and family, and their destruction was substantially as disastrous to him in his endeavors to support himself and family as though he had the actual title. He had, in fact, the possession and the entire beneficial use, of which he was deprived by their destruction. The actual possession and use of property is a valuable right, and it is especially valuable when held with the permission of the real owner."

In the *Horsch case* the husband had purchased a farm, with buildings, paying for same with his own money; and at his direction the deed was made to his wife, upon her agreement to reconvey to him at his request.

In the case of *Trade Ins. Co.* v. *Barracliff*, 46 Am. Rep., 792, on the question of insurable interests we find this legal proposition:

"A husband in possession and enjoyment with his wife of her real and personal property, with an inchoate right of courtesy, has an insurable interest in both, and where the intention was evinced to insure the whole ownership, may recover the whole loss . . . .

"The insurance was effected by the plaintiff (husband) with the authority of the wife, and the agent of the company who made the contract knew that the wife was the owner, at least of the realty . . .

"What constitutes an insurable interest is a subject which has received a great deal of judicial consideration, and which some text writers say is incapable of exact definition. It is certain, from a multitude of decisions, that an estate, either legal or equitable, is not essential to such an interest."

In the case of *Continental Fire Assn.* v. *Wingfield*, Court of Civil Appeals of Texas, 73 S. W., 847, a husband had procured a fire insurance policy on real property owned by his wife.

Upon the destruction of the building by fire, the insurance company refused to pay the husband, contending that he had no insurable interest therein. On this point, the court held, at page 848:

"It appears from the evidence that the property insured and destroyed was the property of the wife of plaintiff and her minor children by a former husband, and that at the time of the insurance and the time of the destruction it was the homestead of the plaintiff and his wife. He was in the actual use and possession of the property, enjoying it as a home, and this right of possession, use, and enjoyment would continue for such a length of time as he and his wife would desire to use the property for that purpose ... The right of use and possession was a valuable one, which attached to the house and improvements located upon the premises, and gave the husband such an interest as he could protect by insurance."

On the subject of an insurable interest in property it is said in 29 American Jurisprudence, Sec. 438 and Sec. 439, pages 781 and 782:

"An insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of, the subject matter of the insurance, and neither the title nor a beneficial interest is requisite to the existence of such an interest; it is sufficient that the insured is so situated with reference to the property that he would be liable to loss should it be injured or destroyed by the peril against which it is insured."

Applying the principles of law enunciated by the authorities cited, can it be said that defendant had an insurable interest in the property damaged? The answer must be No. She does not hold the legal title thereto. She has not demonstrated any equitable interest therein. She has not shown any right to the possession, management or control thereof. She has not shown any pecuniary loss because of its damage. She did not procure the insurance in her name. She was not the head of the household and responsible for the support and maintenance thereof. There is no showing that she is dependent upon the Named Insureds for her support. The most that can be said for defendant's case, from the facts before us, is that she had the use of the damaged property because of her residence in the household and her relationship to the owners, the Named In-

528

sureds of the damaged property. Defendant might have suffered some damage to personal property in which event she could have shown an insurable interest. But that did not happen and we are not concerned with that question. Defendant possibly suffered a loss by being deprived of the use of the garage during the time it was being repaired. But she was not insured against such a loss. Coverage D, Section 1 of the Policy, insuring against an increase in living expense resulting from damage to the garage is limited to the Named Insured. Since the policy contains an agreement between plaintiff and the Named Insureds to pay Named Insureds for damage to property and since the policy bars defendant from the status of an insured as far as any increased cost of living, due to damage to the property, she cannot be said to be an Insured with respect to the damage to the garage.

Defendant has cited the case of *Builders & Mfrs. Mutual Casualty Co.* v. *Preferred Automobile Ins. Co.*, 118 Fed. Rep. (2d), page 118. In that case these facts are set forth on page 119;

"On October 17, 1933, Dwight W. Hummon, of Findlay, Ohio, while engaged in hauling interstate freight in his own automobile truck for the Buffalo and Ohio Transfer Company, from Buffalo, New York, to Cleveland, Ohio, collided with an automobile upon State Route No. 20 in Ashtabula County, Ohio, killing Ida Olle and seriously injuring J. R. Van Norman, occupants of the automobile, and damaging his own truck. At the time of the accident Hummon carried Insurance issued by the appellee, a Michigan corporation, providing indemnity for public liability, property damage, and collision, and $157.73 was paid to Hummon under this policy for property damage. The Preferred policy carried limits for public liability of $5,000 for injury or death of one person, and $10,000 for more than one person. The Buffalo and Ohio Transfer Company, in compliance with the requirements of the Public Utilities Commission of Ohio applicable to interstate trucking operations, carried a blanket insurance policy payable on the gross receipts payment plan covering public liability, with a $25,000 to $50,000 limit, issued by the appellant, an Illinois corporation."

These further facts were set forth therein on page 121:

"When the accident occurred Hummon was driving for the

Buffalo and Ohio Transfer Company, which was insured by a blanket policy covering public liability, required by the Public Utilities Commission of Ohio (Cf. Section 614-115, General Code), and carrying an endorsement made a part of the policy. The endorsement covered all equipment operated under the certificate with or without specific description. The stated purpose of the endorsement was 'to make certain during the term of said policy and any renewal thereof the liability of the company to any person injured in person or property by the negligence of the insured as hereinafter set forth.' Particularly relevant here is the following clause:

" 'The term Named Assured shall be construed to include the interests of the owners and operators of hired cars and/or trailers and of independent contractors, but only while such commercial automobiles and/or trailers are being operated in the interest of or under contract to the Named Assured.'

"Hummon therefore was insured under the blanket policy, whether he be considered employee, or independent contractor. The Mutual Company paid its own liability for the thing against which it had directly insured the Transfer Company when the settlements were consummated. It was primarily liable under the policy, and made the payments either in recognition of its liability or as a volunteer. In neither case can it recover from its own insured the payment made under its contract of insurance. The rule that an insurer who has paid the loss resulting from a peril insured against may be subrogated to all the claims which the insured may have against any person by whose negligence the injury was caused does not apply in a case where the injury was caused by the negligence of the insured himself."

The damages in the cited case were paid under the liability portion of the policy issued by the Mutual Company to the Transfer Company for whom the tortfeasor, Hummon, a named insured in the policy, was driving. In that case the Mutual Company paid the damages caused by Hummon, its named insured, and then obtained a judgment against him for the amount paid and sought to recover from the Preferred Insurance Company which had issued a policy to Hummon. The court held that subrogation did not apply because the damage was caused by the negligence of the insured. In its policy, the Mutual Company agreed with the Transfer Company and with

530

Hummon, because he was a named insured, to indemnify them for any loss they might suffer because of his negligence.

The difference between the facts in the cited case and the facts in the case before us is that in the cited case the Mutual Company had an agreement with Hummon, a named insured, and in the case before us plaintiff had no agreement to indemnify the defendant for her negligence in damaging the garage. It may be true, as suggested by the majority opinion, that the "broad form" Homeowners Policy has enlarged the perils insured against to include all automobiles regardless of ownership, but that fact does not make defendant an insured.

The Homeowners Policy is relatively new in the insurance field, being less than ten years old. These policies are referred to in the F. C. & S. Bulletins, Dwellings, H-1, Rearranged October, 1960, as "Residence package policies." Before 1950 insurance companies would issue separate policies for fire insurance on dwellings and both buildings, fire insurance covering personal property, explosion, burglary and theft insurance, residence boiler insurance, vandalism and malicious mischief, lightning, additional living expense and other perils. The Homeowners Policy combines all of these in "comprehensive dwelling" policy. Let us suppose that defendant in this case had a separate policy with plaintiff covering loss of or damage to personal property on the premises usual or incidental to the occupancy of the premises as a dwelling, owned, worn, or used by her as provided in Coverage C, Section 1, of the policy before us and let us assume further that defendant had a separate policy with plaintiff affording her the coverage provided by plaintiff's policy in 1 (a) of Coverage E in Section 11, which is the liability portion thereof. Let us suppose that plaintiff and the Sparacos had a separate contract covering direct loss caused by damage to the buildings and that the general conditions of the policy did not include defendant as an insured as a member of the household. Assuming then that defendant damaged the Sparacos' garage by the negligent operation of her automobile, would it be seriously argued that plaintiff could not pay the Sparacos the amount of their damage and obtain a right to recover from defendant by way of subrogation? Even though defendant would be an insured of plaintiff, still she would not be an insured insofar as the policy of the Sparacos covering

their loss would be concerned. The fact that the comprehensive residence package policy before us rolls all of these items into one policy does not change matters so as to make defendant an insured in the case before us as to the damage to the garage in such manner as to defeat plaintiff's right to proceed against her by way of subrogation.

It must be remembered that a mother-in-law is not a permanent fixture in the home. She may be here today and gone tomorrow. There is no showing in our case that defendant is in any way dependent upon the Sparacos. She owns a Lincoln automobile which may negative any such assumption.

The majority opinion raises a question whether a dependent son of the Sparacos could be sued by way of subrogation and thus place the parents in the position of having to return to the insurance company by a circuitous route the same money originally paid on their claim. In the first place, a dependent minor son would have an insurable interest in the property damaged and might procure insurance in his own name under authority of the cases cited in this dissenting opinion. He has a right to support which is enforceable. In the second place, parents are not liable for the torts of their minor children and would not be obliged to return any money to an insurance company under the circumstances suggested. Let us assume that an adult son financially well-off, living with his parents, should while in a rage against his parents, drive intentionally into the parents' garage and damage it. The parents could sue him and recover. Why should their subrogee not recover?

In the case before us the Sparacos certainly could have sued defendant and recovered. Why can't their subrogee maintain an action against the defendant? Suppose the Sparacos had sued defendant and recovered a judgment for $1,044.00, the amount of their damage. Could defendant have compelled plaintiff to reimburse her? Certainly not.

In Couch on Insurance, 1961 Supplement, Vol. 8, Chapter 39, Section 1996, it is said, quoting *National Garment Co.* v. *New York, C. & St. L. R. Co.*, 173 Fed. (2d), 32,

"The doctrine of subrogation was adopted by equity to put the burden of loss on the one primarily responsible for it. The right arises out of the nature of the contract of insurance

as a contract of indemnity where one is primarily responsible and the insurer only secondarily liable.''

In the absence of a bill of exceptions, it must be determined by a consideration of the pleadings, by a consideration of the facts to which the parties hereto have agreed in their briefs, by a consideration of the policy submitted to us, by a consideration of the judgment entry and the decision of the trial judge which has been furnished us by counsel, whether the judgment of the common pleas court in overruling plaintiff's motion for summary judgment and rendering final judgment for the defendant was contrary to law. The order overruling plaintiff's motion for summary judgment is not a final order, hence not appealable.

An examination of the trial court's decision reveals these words:

''It is true the mother-in-law had no insurable interest in the children's garage. Although she undoubtedly did have personal property of some nature which was covered by one provision or another of the policy.''

The court said further:

''We are asked to declare the mother not an insured merely because she had no insurable interest. This is very reasonable and logical, but it is contrary to the express language of the policy, which controls.''

The judgment of the common pleas court was contrary to law because it misconstrued the legal effect of plaintiff's policy and erroneously concluded that because defendant was defined as an insured by the General Provisions of the policy and might have claimed benefits under other provisions thereof plaintiff, as a subrogor, had no right of action against her.

The judgment of the common pleas court should be reversed and this cause remanded to that court for further proceedings according to law.