**WESTFIELD INSURANCE COMPANY, Appellee and Cross–Appellant,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant and Cross–Appellee.**

[Cite as *Westfield Ins. Co. v. Nationwide Mut. Ins. Co.* (1993), 99 Ohio App.3d 114.]

Court of Appeals of Ohio,
Montgomery County.

No. 13979.

Decided Dec. 17, 1993.

*Freund, Freeze & Arnold, Stephen V. Freeze* and *Fredric L. Young,* for appellee and cross-appellant.

*Patrick K. Dunphy,* for appellant and cross-appellee.

BROGAN, Judge.

Defendant-appellant and cross-appellee, Nationwide Mutual Insurance Company ("Nationwide"), appeals from the judgment of the Montgomery County Court of Common Pleas in favor of plaintiff-appellee and cross-appellant, Westfield Insurance Company ("Westfield").

This case arises from a declaratory judgment action filed by Westfield seeking a determination of its rights and obligations regarding claims made by Daniel

Fish arising out of an auto accident which occurred on March 21, 1991. Nationwide was named as a defendant and the trial court was also asked to determine the rights and obligations of Nationwide with respect to the accident involving Daniel Fish.

The underlying facts and procedural history of the case are as follows. On March 21, 1991, Daniel Fish, then age fourteen, resided within the geographic boundaries of the West Carrollton City School District Board of Education ("the Board"). Beginning on March 4, 1991, Daniel was placed in Youth Partial Hospitalization ("YPH") pursuant to an Individualized Education Program. Daniel was referred to YPH because of a severe behavioral handicap. Daniel was transported to YPH by a Regional Transit Authority ("RTA") bus. RTA bus tokens were purchased by West Carrollton and provided to Daniel's parents so that Daniel could obtain transportation to YPH. On March 21, 1991, Daniel was struck by an uninsured motorist as he exited an RTA bus on his way home from YPH. On the date of the accident Westfield had in effect a policy of insurance with Daniel's father, Kenneth Fish. Daniel is an insured under the Westfield policy because he is a family member. The policy provides underinsured motorist bodily injury limits of $100,000 each accident. The policy further provides that "any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."

On the date of the accident Nationwide had in effect a policy of insurance with West Carrollton. The policy provides, in its coverage form, automobile liability limits of $1,000,000 only for "specifically described autos." The policy further provides that "for any covered 'auto' you don't own, the insurance provided by this coverage form is excess over any other collectible insurance."

On June 2, 1992, Westfield filed a complaint for a declaratory judgment in the Montgomery County Court of Common Pleas. Westfield sought a determination of its rights and responsibilities with respect to the claims of Daniel. Nationwide answered and denied any responsibility for coverage of Daniel's potential claims arising from the auto accident.

Following discovery, both parties filed motions for summary judgment on February 24, 1993. The trial court issued its entry and final judgment on March 15, 1993. The trial court granted Westfield's motion for summary judgment on the issue of Nationwide's obligation to provide coverage and accordingly denied Nationwide's motion for summary judgment. However, the trial court overruled Westfield's motion for summary judgment to the extent that the motion sought to impose primary coverage upon Nationwide based upon the language of Nationwide policy.

Nationwide filed its notice of appeal on April 14, 1993 and Westfield filed its notice of cross-appeal on April 23, 1993.

Nationwide advances the following assignments of error: "(1) the trial court erred in deciding that an insured policyholder's express selection of certain vehicles for uninsured motorists coverage was not an express rejection of coverage for other vehicles; (2) the trial court erred in finding that a Regional Transit Authority bus was hired by the insured policyholder of the defendant-appellant through the purchase of tokens; (3) the trial court erred holding that the defendant-appellant's policy provides coverage for the alleged hiring of an RTA bus; and (4) the trial court erred in deciding that each party owes a pro rata share of the total loss where the defendant-appellant's policy provides excess coverage only."

Westfield advances one assignment of error in its cross-appeal: "(1) the trial court erred when it found that Westfield was obligated to provide coverage for the claims of Daniel Fish on a pro rata basis with Nationwide. Instead, the language of the Nationwide Policy imposes upon Nationwide the primary obligation to provide coverage for the claims of Daniel Fish. The language of the Westfield Policy imposes upon Westfield only the obligation of excess coverage."

█ In its first assignment, Nationwide contends that the trial court erred by not determining that West Carrollton's selection of certain autos for uninsured motorist coverage constituted an express rejection of uninsured motorist coverage for hired and/or nonowned autos covered under its fleet insurance policy. Westfield, on the other hand, argues that West Carrollton never expressly rejected uninsured motorist coverage under its fleet insurance policy and, thus, uninsured motorist coverage is effective as a matter of law. Ohio requires automobile liability policies issued in Ohio to contain an uninsured motorist provision. R.C. 3937.18. Such provision can be eliminated "only by the express rejection of that provision by the insured." *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, at paragraph two of the syllabus. The express rejection rule applies to both personal and commercial policies of automobile insurance. *Atwood v. Internatl. Ins. Co.* (Dec. 10, 1991), 1991 WL 268346, 1991 Ohio App. LEXIS 6030, Franklin App. No. 91AP–521, unreported. Without an express rejection of uninsured motorist coverage by the insured, "coverage afforded by the 'uninsured motorist' provision is provided to the insured by operation of law." *Abate, supra,* at paragraph two of the syllabus.

█ Nationwide argues that "choosing certain vehicles for coverage in writing and not choosing other vehicles for coverage is an 'express rejection' under R.C. 3937.18(C)." We disagree. We think Westfield is correct that express acceptance of such coverage for certain vehicles is not relevant to the issue. A listing of certain vehicles for uninsured motorist coverage is merely an acceptance of uninsured motorist coverage for those particular vehicles, not an express rejection of such coverage for any other type of vehicle covered under West Carroll-

ton's fleet insurance policy. Instead, we believe Nationwide has the burden to show an express rejection of uninsured motorist coverage for any auto for which coverage was offered or described in the language of both the application and policy. See R.C. 3937.18(C).

■ The trial court specifically found that West Carrollton never expressly rejected uninsured motorist coverage for any auto covered under the fleet policy. In our careful review of the record we have found nothing to indicate otherwise. Thus, we agree with the trial court that no genuine issue fact exists as to whether there was an express rejection of uninsured motorist coverage by West Carrollton, and that such coverage is therefore provided by operation of law.

Accordingly, Nationwide's first assignment is overruled.

■ In its second assignment of error, Nationwide argues that the trial court erred when it found that the RTA bus in which Daniel was riding was "hired" by West Carrollton through the purchase of bus tokens.

The trial court found that the term "hired auto" contained in Nationwide's policy was unambiguous with respect to its application to the RTA bus. The court further found that even if the term was ambiguous, such ambiguity must be construed against the insurer and in favor of coverage. We believe the trial court was correct in its determination.

The Nationwide policy states as follows:

"A. Description of Covered Auto Designation Symbols

"1 = Any 'Auto.'

" * * *

"8 = Hired 'Autos' Only. Only those 'autos' you lease, hire, rent, or borrow. This does not include any 'open auto' you lease, hire, rent or borrow from any of your employees or partners or members of their households."

Words and phrases used in an insurance policy must be given their natural and commonly accepted meaning. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 275–276, 436 N.E.2d 1347, 1347–1348. The word "hire" generally means "to get the services of a person or the use of a thing in return for payment." Webster's World Dictionary (1986) 665.

In the present case, West Carrollton engaged the services of RTA to transport Daniel to YPH through the issuance of purchase orders for RTA bus tokens which were given directly to Daniel's mother for Daniel's use. Accordingly, since West Carrollton obtained the use of the RTA bus for Daniel in return for payment, we agree that no genuine issue of fact remains as to whether Daniel occupied an auto "hired" by the insured, West Carrollton.

Accordingly, Nationwide's second assignment is overruled.

■ In its third assignment of error, Nationwide contends that even if the RTA bus was a "hired auto" within the meaning of the policy language, the trial court erred in finding that Nationwide's policy provides coverage for the hiring of an RTA bus. Nationwide states that a determination of whether Daniel is an "insured" under the Nationwide policy because he had been "occupying" an "auto" "hired" by West Carrollton must necessarily derive from a finding that the purchase of the RTA bus tokens constituted a "contractual hiring" of the bus rather than a mere reimbursement. Nationwide further argues that coverage under the policy would extend to Daniel only if the agreement between West Carrollton and the RTA was within the scope of the definition of "insured contract" in the Nationwide policy.

The language Nationwide refers to provides that an "insured contract":

" * * * does not include that part of any contract or agreement:

"b. That pertains to the loan, lease or rental of an 'auto' to you or any of your employees, if the 'auto' is loaned, leased or rented with a driver."

We think that the record amply supports the conclusion that coverage was available under the Nationwide policy if a contract existed between RTA and West Carrollton for Daniel's transportation and if West Carrollton paid for the transportation. Westfield argues that West Carrollton had a written contract with RTA to provide transportation for Daniel and other children through the purchase orders for the bulk purchase of bus tokens.

The purchase orders represented West Carrollton's agreement to purchase bus tokens from RTA for Daniel's transportation and West Carrollton in fact paid for the tokens. West Carrollton made the tokens available to Daniel specifically to fulfill its statutory obligation to provide him with transportation to YPH. R.C. 3323.01. We think that this is more than sufficient to support a finding that West Carrollton's purchase of the bus tokens constitutes a "contractual hiring" and not a mere reimbursement.[1]

■ Nationwide argues that even if such an agreement existed between West Carrollton and the RTA, such agreement does not fall within the definition of an "insured contract" since such definition does not include the hiring, rental or lease of a vehicle which is supplied with a driver. Westfield counters that the

---

1. We think reimbursement within the meaning of R.C. 3327.01 contemplates the school board paying money to a parent to purchase some type of transportation for the child. As the statute expressly states, this payment is "in lieu of providing such transportation." Here, West Carrollton took it upon itself to provide bus tokens to Daniel's mother for his transportation to YPH. Accordingly, West Carrollton was responsible for "providing" the transportation to Daniel.

language of the Nationwide policy's "insured contract" section does not specifically and expressly exclude "hired" autos which are supplied with a driver, but only expressly excludes those autos which are "loaned, leased or rented with a driver."

West Carrollton clearly did not "lease or rent" the RTA bus to transport Daniel. Neither was the RTA bus "loaned" or borrowed. As we have already determined, the RTA bus was "hired" by West Carrollton. Either purposely or by oversight, Nationwide did not choose to exclude "hired" autos from the definition of "insured contract" even though it must have realized that such vehicles were included in the descriptions of hired and/or nonowned autos in the policy.

 The terms of a policy of insurance must be strictly construed against the insurer and in favor of coverage. See *Edmondson v. Motorists Mut. Ins. Co.* (1976), 48 Ohio St.2d 52, 2 O.O.3d 167, 356 N.E.2d 722. We conclude that Westfield is entitled to judgment as a matter of law that Nationwide's policy does cover the contractual hiring of an RTA bus.

Accordingly, Nationwide's third assignment is overruled.

 Nationwide's final assignment of error presents the same issue as Westfield's cross-appeal. Therefore, we will consider them together. Both Westfield and Nationwide argue that the trial court erred in deciding that each insurance company owes a pro rata share of Daniel's total loss where each insurance company's policy provides for excess coverage only.

The trial court found that both policies provide that they are excess over other coverage when the injury does not arise from the insured's own vehicle. Hence, the trial court concluded, because Daniel's injury did not arise from the insured's own vehicle, each insurance company owes a pro rata share of the total loss, not exceeding the higher policy limit.

· Westfield contends that the trial court failed to recognize an ambiguity present in the Nationwide excess clause which renders that clause inoperative. The Nationwide policy provides that its coverage is excess for "any covered 'auto' you don't own." Nationwide's policy defines nonowned vehicles as "only those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business." Westfield would have us interpret this clause to apply only to vehicles not owned, not leased, not hired or not borrowed by West Carrollton. Accordingly, Westfield contends, since West Carrollton "hired" the RTA bus, such bus should be considered an "owned" vehicle which would be covered by the primary coverage of the Nationwide policy.

 Even in the face of the inartful drafting of Nationwide, we decline to give such an obviously absurd interpretation to the policy language. We recog-

nize the general rule that ambiguities in insurance contracts must be construed strictly against the insurer. See *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380. We conclude, however, that the Nationwide policy language must be read so as to give it its obvious and intended meaning. We think it is clear that the intended definition of "nonowned" autos is only those autos which are not owned, and those autos which are leased, hired or borrowed by West Carrollton. This is the only interpretation which does not render the meaning of the policy language completely ridiculous.

The only issue that remains is to determine how to resolve the conflicting "excess" coverage clauses in both insurance policies. In spite of the parties' arguments, the trial court was correct in observing that both policies appear to cancel each other out with respect to nonowned vehicles.

Westfield's "other insurance" provision is a "pro rata" excess provision in all respects except as to nonowned vehicles where it expressly states the policy is "excess over any other collectible insurance." Nationwide's "other insurance" provision is "excess" in all respects, including with respect to nonowned vehicles. Accordingly, the trial court did not err in apportioning to both Westfield and Nationwide a pro rata share of the total loss, not exceeding the higher policy limit. See *Buckeye Union Ins. Co. v. State Auto. Mut. Ins. Co.* (1977), 49 Ohio St.2d 213, 3 O.O.3d 330, 361 N.E.2d 1052 (liability will be prorated according to the respective policy amounts where there are conflicting excess coverage clauses), and *Continental Cas. Co. v. Buckeye Union Cas. Co.* (C.P.1957), 75 Ohio Law Abs. 79, 91, 143 N.E.2d 169, 179–180 (since there can be primary insurance of the risk where there are conflicting excess clauses, the excess clauses a fortiori cannot be a valid means of establishing only secondary liability).

Accordingly, both Nationwide's final assignment and Westfield's sole assignment are overruled.

In light of the foregoing, the judgment of the Montgomery County Court of Common Pleas will be affirmed.

*Judgment affirmed.*

WOLFF and FREDERICK N. YOUNG, JJ., concur.