[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 358.]

SCHUMACHER ET AL., APPELLANTS, *v*. KREINER; MOTORISTS MUTUAL INSURANCE COMPANY, APPELLEE.

[Cite as *Schumacher v. Kreiner*, 2000-Ohio-344.]

*Insurance—Motor vehicles—Insurance policy provides uninsured/underinsured motorist coverage by operation of law, when—R.C. 3937.18, applied.*

(No. 99-245—Submitted November 16, 1999—Decided April 12, 2000.)

APPEAL from the Court of Appeals for Hamilton County, No. C-980188.

———————————

{¶ 1} Appellant Mark J. Schumacher owned and operated a truck and leased it to Relay Express, Inc. Appellee, Motorists Mutual Insurance Company ("Motorists"), issued a liability policy covering Schumacher's truck to Relay Express. On November 17, 1994, Schumacher was driving his truck as an independent contractor for Relay Express when he was struck by a vehicle driven by Karen Kreiner.

{¶ 2} The insurance policy that Relay Express had purchased from Motorists did not mention uninsured/underinsured motorist ("UM") coverage. Motorists refused to pay for damages suffered by Schumacher, claiming that its insurance policy was solely a liability policy. Schumacher sued Motorists in the Court of Common Pleas of Hamilton County, arguing that the policy covering his truck contained UM insurance by operation of law because UM coverage had been neither offered to nor rejected by Relay Express. See R.C. 3937.18.

{¶ 3} The trial court granted summary judgment in favor of Motorists. The court of appeals affirmed, stating that Schumacher had not contracted directly with Motorists and therefore did not have standing to bring suit against Motorists.

{¶ 4} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Kevin L. Murphy & Associates, PSC,* and *R. Christian Macke, pro hac vice*; *Keating, Muething & Klekamp, Mary Ellen Malas* and *James R. Matthews,* for appellants.

*McIntosh, McIntosh & Knabe* and *Bruce D. Knabe,* for appellee.

_____

**PFEIFER, J.**

{¶ 5} The principal issue in this case is whether the insurance policy covering Schumacher's truck contained UM coverage by operation of law pursuant to R.C. 3937.18. For the reasons that follow, we conclude that Motorists provided automobile insurance to Relay Express without offering UM coverage, that Relay Express did not expressly reject UM coverage, and, therefore, that the policy covering Schumacher's truck contained UM coverage by operation of law. Accordingly, we conclude that summary judgment was improperly granted.

{¶ 6} R.C. 3937.18(A) provides that "[n]o automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds: (1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *. (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *."

{¶ 7} R.C. 3937.18(C) provides that "[a] named insured or applicant may reject or accept both coverages as offered under division (A) of this section * * *. A named insured's or applicant's rejection of both coverages as offered under

division (A) of this section, or a named insured's or applicant's selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants."

{¶ 8} R.C. 3937.18 requires insurers to offer UM coverage in the same amount as any liability coverage provided. When UM coverage is not part of a policy, such coverage is created by operation of law unless the insurer expressly offers it in writing and the insured expressly rejects it in writing before the time that the coverage begins. R.C. 3937.18; *Gyori v. Johnston Coca-Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824. The insurer bears the burden to show timely express written offer and rejection, and it makes no difference whether the parties contemplated such coverage. *Id*.

{¶ 9} There is no evidence in the record of a timely express written offer and rejection of UM coverage.

{¶ 10} Schumacher was injured in an accident while driving a vehicle covered by a liability insurance policy issued by Motorists. To contend, as Motorists did at oral argument, that virtually anyone else driving his vehicle would have standing, but that Schumacher, the owner of the vehicle the insurance was specifically intended to cover and an injured party, does not have standing makes a mockery of Section 16, Article I of the Ohio Constitution and the obvious legislative intent of R.C. 3937.18.

**{¶ 11}** Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded for proceedings consistent with this opinion.

*Judgment reversed*

*and cause remanded.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**COOK, J., dissenting.**

**{¶ 12}** I agree with Justice Stratton that Schumacher lacked standing, since he was not a party to the contract, an insured under the policy, or an intended third-party beneficiary. I further dissent from the majority's opinion because a plaintiff must be an *insured* under the applicable liability policy in order to be eligible for imposition of UM coverage by operation of law. Accordingly, the majority's holding that UM coverage may be extended in favor of a *non-insured* expands R.C. 3937.18 without support and revises the contract entered into between Motorists and Relay Express.

**{¶ 13}** It is a well-established principle that UM coverage was designed to protect *insureds*. The text of R.C. 3937.18(A) enunciates this concept: "No automobile liability or motor vehicle liability policy * * * shall be delivered or issued for delivery in this state * * * unless both of the following coverages are offered to persons *insured under the policy* * * *: (1) Uninsured motorist coverage, which * * * shall provide protection for bodily injury * * * *for the protection of insureds thereunder* * * * [and] (2) Underinsured motorist coverage, which * * * *shall provide protection for insureds thereunder* * * *." (Emphasis added.)

**{¶ 14}** Based upon this principle, this court has stated that the object of UM coverage is to " 'afford the insured additional protection in the event of an accident.' " (Citation omitted.) *Motorists Mut. Ins. Co. v. Tomanski* (1971), 27 Ohio St.2d 222, 224, 56 O.O.2d 133, 134, 271 N.E.2d 924, 925. We have further interpreted

UM coverage as extending only to insureds, specifying that the claimant must be an insured in order to recover. *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 480, 639 N.E.2d 438, 440.

{¶ 15} Where UM coverage is not offered pursuant to the requirements of R.C. 3937.18 or not properly rejected, it is well settled that such coverage will be imposed by operation of law. See, *e.g., Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429. When imposed by operation of law, such coverage extends only to the *insureds* under the liability policy, as they are the individuals who would have benefited from coverage had it been offered. Because coverage by operation of law is rooted in the requirements of R.C. 3937.18, it follows that it exists for the benefit of the individuals R.C. 3937.18 was designed to protect.

{¶ 16} Prior to today, this court apparently agreed with that concept, as it had routinely extended coverage by operation of law only to insureds under the policy at issue. See, *e.g., Gyori v. Johnston Coca-Cola Bottling Group, Inc*. (1996), 76 Ohio St.3d 565, 669 N.E.2d 824; *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* (1998), 85 Ohio St.3d 660, 710 N.E.2d 1116. Although the majority now departs from this fundamental principle, case law from this and other jurisdictions continues to support it. See, *e.g*., 9 Couch on Insurance (3 Ed.1997) 122-90 to 122-91, Section 122:46 (setting forth the effect of failure to offer coverage and implying that it is limited to insureds); *Westfield Ins. Co. v. Nationwide Mut. Ins. Co*. (1993), 99 Ohio App.3d 114, 650 N.E.2d 112 (determining whether an individual claiming coverage by operation of law was an insured); *Abate v. Pioneer Mut. Cas. Co., supra,* at 163, 51 O.O.2d at 230, 258 N.E.2d at 431 ("We therefore conclude that unless the insured expressly rejects such protection, the uninsured motorist coverage is provided *for him* by operation by law." [Emphasis added.]).

{¶ 17} So basic is this concept that this court recently recognized it in *Scott-Pontzer v. Liberty Mut. Fire Ins. Co*., *supra*, as the first issue to be addressed in the

imposition-of-coverage analysis. There, Justice Douglas wrote on behalf of the court: "If we find [the plaintiff] was not an insured under the policies, then our inquiry is at an end." *Id.* at 662, 710 N.E.2d at 1118.

{¶ 18} Today's decision, however, bypasses that important threshold question entirely. In holding that coverage should be imposed in favor of Schumacher by operation of law, the majority neither questions nor resolves whether he was an insured under the Relay Express policy. In fact, the majority avoids any analysis of the contract terms whatsoever, concluding only that to hold otherwise would be to make a mockery of the purposes of R.C. 3937.18 and the Ohio Constitution.

{¶ 19} Had the majority asked the appropriate question and analyzed whether Schumacher was an insured under the policy, it would have found that he unquestionably was not. Schumacher was neither the named insured in the policy nor was he included as an insured under the policy terms. Because he was the "owner" of the covered vehicle he occupied, he was specifically excluded from the category of "Who Is An Insured" under Section II(A)(1)(b)(2) of the Business Auto Coverage Form.

{¶ 20} Nor was Schumacher an insured by means of the Uninsured Motorists Coverage Endorsement to the policy. That endorsement states in Paragraph B.3. that any occupant of a covered auto is an insured for UM purposes. But Schumacher's vehicle was not listed on the Declarations Page as a covered auto for UM insurance purposes. Therefore, he was not occupying a covered auto when injured and cannot be considered an insured under the endorsement.

{¶ 21} Equally untenable is Schumacher's attempt to categorize himself as an insured *after* UM coverage is imposed by operation of law. Schumacher argues that once UM coverage is imposed, he would have been occupying a "covered auto." Therefore, he concludes, he would qualify as an insured and would consequently be entitled to coverage by operation of law. But that circular

argument overlooks the fact that R.C. 3937.18, by its very terms, protects those individuals who are insured under the basic liability policy. Those are the only individuals to whom coverage may be extended and Schumacher did not fit into that category.

{¶ 22} Because Schumacher was not an insured under the policy terms, UM coverage may not be extended to him by operation of law. Nevertheless, the majority concludes that he was entitled to recovery on precisely that basis. In so deciding, the majority extends UM coverage in favor of a *non-insured* and rejects the clear language of the contract in favor of its own notions of equity.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 23} I respectfully dissent because I believe that Schumacher has no standing to file suit against Motorists. The majority states that "[t]he principal issue in this case is whether the insurance policy covering Schumacher's truck contained UM coverage by operation of law pursuant to R.C. 3937.18." Implicit in the majority's framing of the issue is that Schumacher has standing to challenge the insurance coverage involved herein. Such a conclusion puts the cart before the horse. In order for an Ohio court to consider the merits of a legal claim, the person seeking relief must establish standing to sue. *Ohio Contractors Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088, 1089. I believe that Schumacher, as an independent contractor, lacked standing to challenge the Motorists insurance coverage at issue in this case.

{¶ 24} Only an *intended* third-party beneficiary of a contract may bring a contract action in Ohio. *Thornton v. Windsor House, Inc.* (1991), 57 Ohio St.3d 158, 161, 566 N.E.2d 1220, 1223. I believe that language in the lease between Relay and Schumacher indicates that the Motorists insurance policy was for the

benefit of Relay, its insured, not Schumacher, an independent contractor. See *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 669, 710 N.E.2d 1116, 1122 (Lundberg Stratton, J., dissenting.) (Corporations provide insurance on company vehicles for the purpose of insuring the company against liability arising from use of the corporate vehicles.).

{¶ 25} The "Standard Equipment Lease" in this case reads as follows:

"5. RELATIONSHIP: It is understood and agreed by the parties hereto that *lessor is not an employee of LESSEE: and furthermore, that the employees or agents of one party are not the employees or agents of the other party.* * * *

"6. INSURANCE/INDEMNIFICATION: *LESSEE* [Relay] *shall be responsible to the general public for damages occurring during the period of this lease* and shall insure against such damages as required by law. * * * " (Emphasis added.)

{¶ 26} I believe that this language in paragraph 6 evidences an unambiguous intent that Relay was acquiring insurance for the purpose of protecting *itself* against liability arising from potential negligent conduct by Schumacher in conducting Relay's business as Relay's independent contractor. The language in paragraph 5, which evidences a clear intent that Schumacher was an independent contractor, *not* a Relay employee, bolsters this conclusion. Thus, I would find that there is no evidence that the Motorists insurance policy intended that Schumacher be a third-party beneficiary. Rather, the Motorists insurance policy was for the benefit of Relay, its insured.

{¶ 27} "[A]n insurance policy is a contract and * * * the relationship between the insured and the insurer is purely contractual in nature." *Scott-Pontzer, supra,* at 663, 710 N.E.2d at 1119. Consequently, if a person is a party to the contract for insurance or satisfies the definition of the term "insured," as set out in the policy, he or she would have standing to sue the insurer. But, where a person is not a party to the contract and is not an intended third-party beneficiary to a

contract, he or she has no standing to bring an action on that contract. *Thornton, supra,* at 161, 566 N.E.2d at 1223. Accordingly, where an individual is not a party to the contract for the insurance policy, a third-party beneficiary of the policy, or an insured, that person does not have standing to claim any rights under the contract. *Justice v. Nationwide Ins. Co.* (May 27, 1999), Franklin App. No. 98AP-1083, unreported, 1999 WL 333242.

{¶ 28} It is undisputed that the contract of insurance from Motorists providing coverage to Schumacher's vehicle was executed between Relay and Motorists. Thus, Schumacher was not a party to the contract of insurance provided to Relay by Motorists.

{¶ 29} The Motorists policy at issue in this case states:

"1. WHO IS AN INSURED

"The following are 'insureds':

" * * *

"(b) Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:

"(1) The *owner or anyone else from whom you hire or borrow a covered 'auto.' * * **" (Emphasis added.)

{¶ 30} I would find that this language unambiguously excepts Schumacher from the definition of an insured under the Motorists insurance policy because Schumacher was the owner of the truck.

{¶ 31} Thus, I would hold that Schumacher was not a party to the contract for the Motorists insurance policy, that Schumacher was not an "insured," as defined in the Motorists insurance policy, and that Schumacher was not the intended beneficiary of the Motorists insurance policy. Accordingly, I would hold that Schumacher, as an independent contractor, had no standing to challenge the insurance contract procured by Relay from Motorists.

**{¶ 32}** In addition, the majority opinion omits an important fact. Schumacher had a policy of insurance covering his vehicle at the time of the accident through the Progressive Insurance Company. With regard to that policy, the trial court stated: "[Schumacher] apparently has never attempted to collect under the UM/UIM provisions of this policy. It is presumed that the statute of limitations for making a claim expired on or about November 17, 1996." Thus, contrary to what might be inferred by the omission of this fact in the majority opinion, Schumacher had his own policy of insurance that potentially provided coverage for his truck at the time of the accident but failed to seek recovery for some reason. Apparently due to his failure to seek UM coverage under his own policy, he filed this lawsuit in an attempt to force recovery under the Motorists insurance policy.

**{¶ 33}** But, because I believe that Schumacher, as an independent contractor, was not an insured under the Motorists insurance policy, he had no standing to challenge the policy coverage in court. Therefore, I respectfully dissent.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____