DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted the summary judgment motion of defendant-appellee Westchester Fire Insurance Company ("Westchester") on plaintiffs-appellants Kenneth Brodbeck and Rose Kuhlman's claim for declaratory judgment. Appellants now raise the following assignments of error from that judgment:
"FIRST ASSIGNMENT OF ERROR:
 The trial court erred in granting appellee's motion for summary judgment.
"SECOND ASSIGNMENT OF ERROR:
 The trial court erred in refusing to hold as a matter of law that: (1) Westchester Fire Insurance Company Policy No. CUA-102071-0 provides uninsured/underinsured motorist ("UM/UIM") coverage by operation of law; and (2) the policy's scope-of-employment restriction is inapplicable to appellants' UIM claim."
The undisputed facts of this case are as follows. On June 20, 1997, Kenneth Brodbeck was severely injured when the motorcycle he was riding was struck by a car driven by defendant Thomas Funkhouser[1]. Funkhouser was a partner in the accounting firm of Miller, Gardner 
Co., C.P.A.s ("Miller"). At that time, Brodbeck was employed by The Andersons, Inc., although he had not worked on the day of the accident and was returning from a friend's house when the accident occurred. At the time of the accident, The Andersons was the named insured under a business auto insurance policy (Policy No. 1-57353749) and a commercial general liability insurance policy (Policy No. 1-57353718) issued by Continental Casualty Company ("CCC"). In addition, The Andersons was the named insured under a commercial umbrella insurance policy (Policy No. CUA-102071-0) issued by Westchester.
On September 21, 1998, Brodbeck and his mother, appellant Rose Kuhlman, filed suit against Funkhouser and Miller. The claims against Miller were ultimately dismissed and the claims against Funkhouser were settled. Prior to settling the claims against Funkhouser, however, appellants filed an amended complaint that added CCC and Westchester as party defendants. Appellants claimed that Brodbeck was an insured under both CCC policies and under the Westchester policy and sought a declaratory judgment that they were entitled to underinsured motorist ("UIM") benefits under all three policies.
On September 15, 2000, Westchester moved for summary judgment. Westchester argued that it was entitled to judgment as a matter of law because, in purchasing the policy at issue, The Andersons had executed a form rejecting uninsured and underinsured motorist ("UM/UIM") coverage. Westchester further argued that even if UIM coverage was not properly rejected, appellants were not entitled to coverage because the policy restricted coverage to injuries sustained during the scope of employment and Brodbeck was undisputably outside the scope of his employment at the time of the accident. Finally, Westchester asserted that assuming the policy provided UIM coverage and the scope of employment restriction was held to be inapplicable, appellants could not recover under the Westchester policy until all of the limits of coverage under the CCC policies had been exhausted. Westchester supported its summary judgment motion with the affidavit of Brian D. Sullivan, the vice president of the Hylant
Group and the account executive responsible for procuring insurance for The Andersons; the affidavit of Janet R. LaPlant, the insurance manager for The Andersons; and the affidavit of Nancy A. McCollum, the vice president of ACE USA, Westchester Specialty Division.
Appellants responded to the summary judgment motion with a memorandum in opposition in which they argued in relevant part that the "rejection" form signed by The Andersons was neither a timely written offer nor a timely executed rejection of UIM coverage and that the scope of employment restriction in the policy was inapplicable because the UIM coverage existed by operation of law. They further asserted that under the evidence submitted by Westchester, appellants themselves were entitled to summary judgment.
On October 26, 2000, the trial court filed an opinion and judgment entry granting Westchester's motion for summary judgment[2]. In particular, the court held that it was undisputed that the rejection of UIM coverage was executed and delivered on October 2, 1995, prior to the effective date of the policy. In reaching this conclusion, the court necessarily determined that the policy period at issue was July 15, 1996 to July 15, 1997. The court further found that the policy restricts coverage for employees to only those acting within the scope of their employment. Because there was no dispute that Brodbeck was not within the scope of employment at the time of the accident, the court held that even if the rejection form was not effective, appellants would not be covered under the policy's UIM coverage. Finally, the court held that given these conclusions, Westchester's argument regarding exhaustion of the underlying insurance limits was moot. It is from this judgment that appellants now appeal.
Appellants' assignments of error are interrelated and will be discussed together. Appellants challenge the trial court's granting of Westchester's motion for summary judgment. In reviewing a ruling on a motion for summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Summary judgment will be granted where there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
Additional facts relevant to the issues raised on appeal are as follows. The Westchester umbrella policy procured by The Andersons states on the declarations page that the "policy period" is from July 15, 1995 to July 15, 1998. Prior to the beginning of the policy, Brian D. Sullivan communicated with The Andersons regarding the coverages it desired to secure and further knew of The Andersons' practice of not purchasing UM or UIM coverage in umbrella or excess policies. After coverage began on July 15, 1995, the policy itself was issued by Westchester and forwarded to The Andersons with a UM/UIM coverage rejection form. Sullivan stated in his affidavit that based on his practice, he likely delivered the policy and rejection form in person to The Andersons on October 2, 1995. The rejection form was then signed on that day by Janet LaPlant and Sullivan forwarded the executed rejection form to Westchester's representative.
The umbrella policy procured by The Andersons provides coverage as follows:
"1. COVERAGE
 "(1) WE WILL PAY ON BEHALF OF THE `INSURED' THOSE SUMS IN EXCESS OF THE `RETAINED LIMIT' WHICH THE `INSURED', [SIC] BY REASON OF LIABILITY IMPOSED BY LAW, OR ASSUMED BY THE `INSURED' UNDER CONTRACT PRIOR TO THE `OCCURRENCE', [SIC] SHALL BECOME LEGALLY OBLIGATED TO PAY AS DAMAGES FOR:
 "(A) `BODILY INJURY' OR `PROPERTY DAMAGE' OCCURRING DURING THE POLICY PERIOD STATED IN ITEM 2 OF THE DECLARATIONS (`POLICY PERIOD') AND CAUSED BY AN `OCCURRENCE'; [sic]
 "(B) `PERSONAL INJURY' CAUSED BY AN OFFENSE COMMITTED DURING THE `POLICY PERIOD'; [sic] OR
 "(C) `ADVERTISING INJURY' CAUSED BY AN ACT COMMITTED DURING THE `POLICY PERIOD'. [sic]"
The policy then defines the term "insured" in pertinent part as follows:
 "(2) The term `Insured' as used herein means the `Named Insured' and:
"* * *
 "(d) at your option and subject to the terms of this policy, any of your employees while within the scope of their employment by you, except for:
 "(i) `Bodily Injury' or `Property Damage' arising out of the use of an `Automobile', [sic] other than one owned by, loaned to, or hired by you[.]"
Finally, the rejection form signed by Janet LaPlant is titled "UNINSURED/UNDERINSURED COVERAGE — REJECTION FORM" and reads:
 "NOTICE: The laws of your state permit you to reject Uninsured/Underinsured Motorist Coverage IN WRITING. Without your written rejection, the insurance company providing your automobile coverage is by law required to provide the coverage.
 "Once you have rejected the coverage in writing, it is unnecessary for this company to present this form to you again at the time of policy renewal.
 "CAUTION: In the event that you prefer to reject UNINSURED/UNDERINSURED MOTORIST COVERAGE, it is suggested that you consult with your insurance agent first. Your agent can best explain the kind of insurance the coverage provides, and whether or not your insurance program needs to include the coverage.
 "REJECTION OF UNINSURED/UNDERINSURED MOTORIST COVERAGE — SIGNATURE REQUIRED:
 "I UNDERSTAND THAT I HAVE THE RIGHT TO REJECT UNINSURED/UNDERINSURED MOTORIST COVERAGE AND HEREBY DO SO BY SIGNATURE:"
In granting Westchester's motion for summary judgment, the trial court first determined that The Andersons had effectively rejected UIM coverage and that, accordingly, appellants had no right to such coverage under the policy.
R.C. 3937.18(A)[3] requires that all insurance companies offer UM/UIM coverage with all automobile liability or motor vehicle liability policies of insurance delivered or issued for delivery in this state. If the insurer fails to offer such coverage, UM/UIM coverage is provided by operation of law. Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, 567. This requirement applies equally to policies of excess insurance coverage. Duriak v. Globe American Cas. Co. (1986), 28 Ohio St.3d 70, 72, overruled in part and on other grounds inMiller v. Progressive Cas. Ins. Co. (1994), 69 Ohio St.3d 619. The named insured, however, can reject UM/UIM coverage pursuant to R.C. 3937.18(C), so long as the rejection is made knowingly and expressly. Ady v. WestAm. Ins. Co. (1982), 69 Ohio St.2d 593, 597; Abate v. Pioneer Mut. Cas.Co. (1970), 22 Ohio St.2d 161, 165. Absent a knowing and express rejection, coverage is provided by operation of law. Id. Moreover, the Ohio Supreme Court has held that both the offer to provide coverage and the rejection of such coverage must be made in writing before the time that the coverage begins. Gyori, supra at paragraph two of the syllabus. See, also, Schumacher v. Kreiner (2000), 88 Ohio St.3d 358. The burden is on the insurance company to demonstrate that a customer knowingly rejected the coverage. Ady, supra at 597; Gyori, supra at 567-568.
Appellants first argue that the rejection form quoted above fails to qualify as a timely, effective written offer of UM/UIM coverage. InGyori, supra at 568, the Supreme Court of Ohio held that an offer of UM/UIM coverage must be in writing because "there can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of UM coverage from the insurance provider." Subsequently, in Linko v. Indemn. Ins. Co. of N.Am. (2000), 90 Ohio St.3d 445, the court reaffirmed its holding in Gyori
and addressed the question certified to it of whether the UM/UIM rejection form accompanying the policy at issue satisfied the offer requirements of R.C. 3937.18. The rejection form in Linko reads:
 "Ohio Revised Code Section 3937.18 requires us to offer you Uninsured/Underinsured Motorists Insurance coverage in an amount equal to the policy bodily injury liability limit(s) with respect to any motor vehicle registered or principally garaged in the State of Ohio, unless you reject such coverage.
 "Unless you have previously rejected this coverage, your policy has been issued to include Uninsured/Underinsured Motorists Insurance coverage at limit(s) equal to the policy bodily injury liability limit(s)."
Reviewing this language, the court held that "the Indemnity contract that purports to be an offer states the law, but does not contain the information necessary to make it a meaningful offer." Id. at 449. The court then found that a written offer of UM/UIM coverage must contain "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits" to constitute a valid offer. Id. In light of Linko, we must conclude that the rejection form in the present case does not constitute a valid written offer of UM/UIM insurance coverage. The form does not describe UM/UIM coverage, does not state the premium for such coverage and does not state the limits for such coverage. Because the rejection form at issue did not present a valid written offer, The Andersons did not effectively reject UM/UIM coverage from the Westchester policy and the coverage arises by operation of law.
Westchester contends, however, that Linko does not state the law in Ohio because it contains no syllabus and is not a per curiam opinion. In support, Westchester cites S.Ct.R.Rep.Op. 1 which reads:
 "(A) All opinions of the Supreme Court shall be reported in the Ohio Official Reports.
 "(B) The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication.
 "(C) In a per curiam opinion of the Supreme Court, the point or points of law decided in the case are contained within the text of each per curiam opinion and are those necessarily arising from the facts of the specific case before the Court for adjudication."
There is no rule regarding the precedential effect of a Supreme Court opinion which is neither a per curiam opinion nor contains a syllabus.Collins v. Swackhamer (1991), 75 Ohio App.3d 831, 834. Nevertheless, S.Ct.Prac.R. XVIII(8) provides that "[i]f the Supreme Court decides to answer a question or questions certified to it, it will issue a written opinion stating the law governing the question or questions certified." Accordingly, in our view, when the Supreme Court issues an opinion answering a question of state law that has been certified to it, the opinion itself states the law in Ohio. Linko is such a case. In issuing the opinion, the court answered questions of Ohio state law that had been certified to it by the United States District Court for the Western District of New York, including "[w]hether the language of the uninsured/underinsured motorist coverage rejection forms accompanying the subject automobile liability policy satisf[ies] the offer requirements of R.C. 3837.18 [sic, 3937.18]." For the reasons stated above, the court held that it did not and set forth the law in Ohio regarding valid offers.
Assuming arguendo that the offer of UM/UIM coverage was valid in this case, appellants further assert that The Andersons' rejection of that coverage was invalid because it was untimely as a matter of law. The Supreme Court of Ohio held in Gyori, supra at paragraph two of the syllabus that "[i]n order for a rejection of uninsured motorist coverage to be expressly and knowingly made, such rejection must be in writing and must be received by the insurance company prior to the commencement of the policy year." In Schumacher, supra at 359-360, the court reaffirmed its holding in Gyori by stating that "[w]hen UM coverage is not part of a policy, such coverage is created by operation of law unless the insurer expressly offers it in writing and the insured expressly rejects it in writing before the time that the coverage begins." Appellants assert that the policy at issue herein was a three year policy with a policy period from July 15, 1995 to July 15, 1998. Because the rejection form was not signed by The Andersons' representative until October 2, 1995, appellants contend that the form failed to reject UM/UIM coverage for the entire three year policy period. Westchester counters that while the policy was initially effective on July 15, 1995, it was renewed annually through July 15, 1998. Because the rejection form was signed on October 2, 1995 and returned to Westchester within the following week, Westchester contends that the rejection was effective for the policy period beginning on July 15, 1996 and thereafter.
Item 2 of the declarations page of the Westchester policy states: "POLICY PERIOD: POLICY COVERS FROM JULY 15, 1995 TO JULY 15, 1998 12:01 A.M. STANDARD TIME AT THE NAMED INSURED'S ADDRESS STATED ABOVE." The coverage provisions in the policy then refer to "bodily injury" and "property damage," occurring during the "policy period" stated in Item 2 of the declarations page. In Linko, supra at 450, the Supreme Court of Ohio noted that the "four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made by each of the named insureds." We similarly find that the four corners of the insurance agreement control in determining the length of the policy period. In the present case, the policy period is expressly defined by the insurance agreement as a three year term. The policy, however, is ambiguous in one relevant respect. Endorsement No. 40, titled "THREE YEAR ANNUAL REVIEW ENDORSEMENT" reads in relevant part as follows:
"1) ANNUAL REVIEW
 THE GUARANTEED FIXED RATE OF $3.846 PER THOUSAND OF PAYROLL IS SUBJECT TO A REVIEW WITHIN THIRTY (30) DAYS OF EACH ANNIVERSARY DATE OF UPDATED LOSS EXPERIENCE, CURRENT DESCRIPTION OF OPERATION, CURRENT EVALUATION OF EXPOSURES AND LIMITS, PREMIUMS AND ACCEPTABILITY OF UNDERLYING INSURANCE.
"2) PREMIUM
 "YOUR RENEWAL PREMIUM WILL REMAIN UNCHANGED FOR THE POLICY PERIODS 1996-1997 AND 1997-1998 IF YOUR ESTIMATED PAYROLL FOR EACH RENEWAL PERIOD IS WITHIN 10% OF THE ESTIMATED PAYROLL FOR THE PERIOD IMMEDIATELY PRECEDING RENEWAL. IF YOUR ESTIMATED PAYROLL FOR THE RENEWAL POLICY PERIOD IS NOT WITHIN 10%, THEN YOUR RENEWAL PREMIUM WILL BE CALCULATED BY APPLYING THE RATE OF $3.846 PER THOUSAND OF PAYROLL.
 "PREMIUMS WILL NOT BE SUBJECT TO ADJUSTMENT AFTER A PREMIUM HAS BEEN ESTABLISHED FOR A GIVEN POLICY PERIOD, UNLESS THE `INSURED' ACQUIRES OR CREATES A SUBSIDIARY WHOSE PAYROLLS EXCEED 20% OF THE `INSURED' ESTIMATED PAYROLL FOR THE POLICY PERIOD DURING WHICH THE SUBSIDIARY WAS ACQUIRED. IF THAT HAPPENS, AN ADDITIONAL PREMIUM WILL BE DEVELOPED BASED ON THE RATE OF $3.846 PER THOUSAND OF PAYROLL ON A PRO-RATE BASIS."
Accordingly, with regard to policy premiums to be paid, the policy provides that it is subject to annual review and uses the terms "policy period" and "renewal period" interchangeably. The use of the term "policy period" in Endorsement No. 40 conflicts with the policy's definition of the term in the declarations page and thereby creates an ambiguity. "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." King v. NationwideIns. Co. (1988), 35 Ohio St.3d 208, syllabus. Accordingly, we must hold that the term "policy period" as defined in the declarations page of the policy controls and that the policy at issue was a three year policy covering the period from July 15, 1995 to July 15, 1998. As such, the rejection form signed by The Andersons' representative was untimely as to the entire policy period and UM/UIM coverage arose by operation of law.
Finally, assuming arguendo that the rejection form was a timely offer and rejection of UM/UIM coverage, appellants contend that the trial court erred in concluding that the scope of employment restriction in the Westchester policy prevented them from recovering under the policy. The issue raised in this argument is the applicability of the so-calledScott-Pontzer doctrine to the facts of this case. In the case ofScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, the decedent, Christopher Pontzer, was killed in an automobile collision which was the result of the negligence of an underinsured motorist. At the time of the collision, Pontzer was driving his wife's automobile and was not acting within the scope of his employment with Superior Dairy. Superior Dairy was the named insured under a policy of commercial automobile liability insurance, which included UIM coverage, and was the named insured under an insurance policy of umbrella/excess coverage, which did not include UIM coverage.
On review, the Supreme Court of Ohio first held that, absent limiting provisions, employer commercial UM/UIM coverage extends to all of a named insured corporation's employees. The same applies for corporate umbrella/excess policies which contain any element of automobile liability coverage, even if such policies do not mention UM/UIM coverage. The court then determined that because Liberty Mutual failed to offer UM/UIM coverage to Superior Dairy under the umbrella/excess coverage policy, that coverage arose by operation of law. The court further concluded that although the umbrella policy restricted coverage to employees acting within the scope of their employment, that restriction was only intended to apply to excess liability coverage. Because the umbrella policy was not intended to apply to UM/UIM coverage, and because UM/UIM coverage arose by operation of law due to Liberty Mutual's failure to offer such coverage to Superior Dairy, the court held that Pontzer's wife was entitled to UIM benefits under the umbrella policy. Accordingly, Scott-Pontzer stands for the proposition that with excess/umbrella policies where UM/UIM coverage is imposed by virtue of R.C. 3937.18 (i.e. by operation of law), even language which limits coverage to an employee acting within the scope of his or her employment is ineffective because it is presumed to apply to excess liability coverage only. Green v. The Cincinnati Ins. Co. (Dec. 7, 2001), Huron App. No. H-01-018, unreported. In Ezawa v. Yasuda FireMarine Ins. Co. of Am. (1999), 86 Ohio St.3d 557, the court appliedScott-Pontzer to family members of employees.
In the present case, the Westchester umbrella policy contains the following scope of employment exclusion:
 "(2) The term `Insured' as used herein means the `Named Insured' and:
"* * *
 "(d) at your option and subject to the terms of this policy, any of your employees while within the scope of their employment by you, except for:
 "(i) `Bodily injury' or `Property Damage' arising out of the use of an `Automobile', [sic] other than one owned by, loaned to, or hired by you[.]"
Pursuant to the Scott-Pontzer doctrine, we are compelled to find that this scope of employment exclusion applies solely to excess liability coverage and not to the UIM coverage that has arisen by operation of law. Accordingly, we must conclude that the trial court erred in granting Westchester's motion for summary judgment and the first assignment of error is well-taken.
In their second assignment of error, appellants assert that the trial court erred in failing to grant summary judgment in their favor and ask this court to enter that judgment.
As noted above, in ruling on Westchester's motion for summary judgment, the trial court found Westchester's argument that appellants had not exhausted the limits of underlying coverage to be moot. This argument will surely be resurrected upon remand. Accordingly, appellants have not established that they are entitled to judgment as a matter of law and the second assignment of error is not well-taken.
On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas is reversed in part. This case is remanded to the trial court for further proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
JUDGMENT REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, J., JUDGES CONCUR.
[1] On March 21, 2000, the trial court filed a partial dismissal order recognizing that all matters in controversy between Brodbeck and Funkhouser had been settled. In reaching their settlement, Funkhouser admitted his sole cause and negligence in the accident and further admitted that Brodbeck was at no fault in causing the accident. Accordingly, this decision only addresses the claims Brodbeck brought against his employer's insurance companies.
[2] The court also granted the summary judgment motion of CCC; however, because that ruling has not been challenged on appeal we will not address it herein.
[3] R.C. 3937.18 has been amended four times since July 15, 1995. The statutory law in effect at the time a contract for automobile liability insurance is entered into controls the rights and duties of the parties.Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281. Accordingly, the provisions of R.C. 3937.18 in effect on July 15, 1995, the beginning date of the policy period, will apply to this case. In addition, the case law interpreting that version of the statute will also apply to this case. Id. at 290; Lakeside Ave. L.P. v. Cuyahoga Cty. Bd.of Revision (1999), 85 Ohio St.3d 125, 127.