**TUREK, Grdn., Appellant,**

v.

**VAUGHN et al., Appellees.**

[Cite as *Turek v. Vaughn,* 154 Ohio App.3d 612, 2003-Ohio-4473.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–03–20.

Decided Aug. 25, 2003.

</div>

---

614

Jerome T. Linnen Jr., for appellant Craig Turek.

Thomas Antonini and Scott A. Haselman, for appellee Indiana Insurance Company.

Marc Meister, for appellee Cincinnati Insurance Company.

Paul E. Hoeffel and Marshall Guerin, for appellee Linda Vaughn.

---

WALTERS, Judge.

{¶ 1} Plaintiff-appellant, Craig Turek ("appellant"), as parent and natural guardian of his minor son, Skylar Turek, appeals a Seneca County Common Pleas Court judgment finding that Skylar did not qualify for underinsured motorist coverage or medical-payments coverage under a policy issued to his mother's employer by defendant-appellee Indiana Insurance Company ("Indiana") and, further, that Skylar did not qualify for underinsured motorist coverage under an umbrella policy issued to his father's employer by defendant-appellee Cincinnati Insurance Company ("Cincinnati"). Because rejections of uninsured/underinsured motorist (collectively, "UIM") coverage must be received prior to the commencement of the policy period for policies governed by the S.B. 20 version of R.C. 3937.18, we find that Cincinnati's rejection of UIM coverage under its umbrella policy was an error. As to the Indiana policy, we are required to find that Skylar qualifies as an insured for purposes of UIM coverage. However, we decline to extend the reasoning of *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, beyond the specific realm of UIM coverage to medical-payments coverage. Finding that issues of material fact remain with respect to the policies' notice and subrogation provisions, we remand this cause for further proceedings in accordance with this opinion.

{¶ 2} On July 3, 1996, Skylar suffered severe and permanent injuries when he was struck by a motor vehicle operated by Linda Vaughn as he attempted to cross South Marion Street in the village of Bloomville, Ohio. At the time of the accident, Vaughn was insured under an automobile liability policy issued by Nationwide Insurance, with per-person liability limits of $50,000. In addition, appellant, Skylar's father, had UIM coverage with Grange Mutual Casualty Company ("Grange"). On January 14, 2002, appellant filed a personal-injury action against Vaughn and a declaratory judgment and bad-faith action against Grange, seeking UIM coverage for Skylar.

{¶ 3} On the date of the accident, Skylar's mother was employed by the North Central Ohio Educational Service Center ("NCOESC"). NCOESC was the named insured on a policy issued by Indiana that included a UIM limit of $1,000,000 and a medical-payments limits of $10,000.

{¶ 4} Skylar's father was employed by Republic Roofing and Siding, Inc. ("Republic"). Republic was insured under a Cincinnati commercial automobile policy with a UIM limit of $300,000. Republic was also insured under a Cincinnati umbrella policy with a coverage limit of $1,000,000.

{¶ 5} On June 11, 2002, appellant filed an amended complaint adding Indiana and Cincinnati as defendants. Appellant subsequently settled his claims against Vaughn and Grange. Thereafter, appellant, Indiana, and Cincinnati filed motions for summary judgment. The matter came on for hearing on February 4, 2003. The trial court granted summary judgment in favor of Indiana, concluding that R.C. 3313.201 permitted NCOESC to purchase UIM coverage only for employees occupying NCOESC-owned vehicles. The court further concluded that Republic had validly rejected UIM coverage six months after the Cincinnati umbrella policy was issued. Appellant subsequently settled all claims with respect to the Cincinnati commercial automobile policy.

{¶ 6} Appellant appeals the entry of summary judgment in favor of Indiana and Cincinnati, presenting three assignments of error for review. Indiana cross-appeals, pursuant to R.C. 2505.22, presenting two cross-assignments of error for review.

{¶ 7} Because this appeal arises from entries of summary judgment, we begin by setting forth the applicable standard of review.

## I. Summary Judgment

{¶ 8} Summary judgment is appropriate when, looking at the evidence as a whole, the record demonstrates (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that after construing the evidence most strongly in the nonmovant's favor, reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made.[1] In ruling on a summary judgment motion, the trial court is not permitted to weigh evidence or choose among reasonable inferences; rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the nonmovant.[2] Appellate review of summary judgment is conducted independently of and without affording deference to the trial court's determination.[3] Accordingly, a reviewing court will not reverse an otherwise

---

1. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196.

2. *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653.

3. *Schuch v. Rogers* (1996), 113 Ohio App.3d 718, 720, 681 N.E.2d 1388.

correct judgment merely because the lower court used different or erroneous reasons as the basis for its determination.[4]

## ASSIGNMENT OF ERROR NO. I

"The Trial Court erred by finding that the Indiana Policy did not provide underinsured motorists coverage and medical payments coverage to Plaintiff–Appellant."

## CROSS–ASSIGNMENT OF ERROR NO. I

"The Trial Court erred when it failed to find that Appellant did not qualify as an 'insured' under the terms of the Indiana Policy, and the Trial Court should have granted Indiana's motion for summary judgment on this issue as well."

## II. Application of R.C. 3313.201(A)

{¶ 9} In his first assignment of error, appellant argues that the trial court erred in concluding that school boards are statutorily precluded from purchasing contracts that provide UIM coverage for employees who are not operating a school-owned vehicle or acting within the scope of their employment at the time of the accident.

{¶ 10} As mentioned above, the trial court found the Sixth Circuit's decision in *Nationwide Agribusiness Ins. v. Roshong*,[5] to be persuasive. Relying thereon, the trial court concluded that R.C. 3313.201(A) only provided NCOESC authority to purchase UIM coverage for school employees while operating or occupying school-owned vehicles while in the scope of employment. However, we recently rejected *Roshong* and the arguments presented by Indiana in *Finn v. Nationwide Agribusiness Ins. Co.*,[6] concurring with decisions released by Ohio's Eighth, Ninth, and Tenth Appellate Districts.[7] Accordingly, we proceed to examine the terms of the Indiana policy to determine whether Skylar qualifies for coverage.

---

4. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775, ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150.

5. *Nationwide Agribusiness Ins. v. Roshong* (Sept. 5, 2002), C.A. 6 No. 01–4009, 47 Fed.Appx. 273.

6. *Finn v. Nationwide Agribusiness Ins. Co.*, Allen App. No. 1–02–80, 2003-Ohio-4233, 2003 WL 21904743, at ¶ 28–33.

7. See, e.g., *Mizen v. Utica Natl. Ins. Group*, 147 Ohio App.3d 274, 2002-Ohio-37, 770 N.E.2d 97, at ¶ 23; *Roberts v. Wausau Business Ins. Co.*, 149 Ohio App.3d 612, 622, 2002-Ohio-4734, 778 N.E.2d 594, at ¶ 61; *Griffith v. Wausau Business Ins. Co.*, Franklin App. Nos. 02AP–551

### III. Indiana Policy Coverage Terms

{¶ 11} It is well settled that an insurance policy is a contract and that the relationship between the insured and the insurer is purely contractual in nature.[8] Insurance coverage is determined by reasonably construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed."[9] "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured."[10] However, where the intent of the parties to a contract is evident from the clear and unambiguous language used, a court must not read into the contract a meaning not contemplated or placed therein by the parties to the contract.[11]

### A. UIM Coverage—Who is an "Insured"

{¶ 12} Appellant argues that Skylar qualifies as an insured under the Indiana UIM coverage provisions on the basis of the Ohio Supreme Court's pronouncements in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*,[12] and *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.*[13]

{¶ 13} In *Scott–Pontzer*, the Ohio Supreme Court held that a plaintiff's decedent, who had been killed in an automobile accident that was caused by an underinsured motorist, was entitled to UIM coverage under his employer's commercial automobile liability policy.[14] The decedent's employer, a corporation, was the named insured under the policy, which defined an "insured" for purposes of UIM coverage as including "[y]ou," and "[i]f you are an individual, any family

---

and 02AP–664, 2003-Ohio-955, 2003 WL 722874, at ¶ 14–15; *Allen v. Johnson*, Wayne App. No. 01CA0046, 2002-Ohio-3404, 2002 WL 1453790, at ¶ 22.

8. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 472 N.E.2d 1061.

9. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380; *Dealers Dairy Products Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O.2d 424, 164 N.E.2d 745, paragraph one of the syllabus.

10. *King*, 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus (citations omitted).

11. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 168, 24 O.O.3d 274, 436 N.E.2d 1347.

12. *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116.

13. *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.* (1999), 86 Ohio St.3d 557, 715 N.E.2d 1142.

14. *Scott–Pontzer*, 85 Ohio St.3d at 665, 710 N.E.2d 1116.

member."[15]  The court determined that the policy language concerning who was an insured was ambiguous, because the word "you," while referring to the corporation, also could be interpreted to include the corporation's employees, "since a corporation can act only by and through real live persons."[16]  Citing the principle that ambiguous language in an insurance policy is to be construed liberally in favor of the insured and against the insurer, the court concluded that plaintiff's decedent was an insured under the policy for purposes of UIM coverage.[17]  The court also concluded that the decedent was entitled to UIM coverage even though he was not acting within the scope of his employment at the time the accident occurred, because the Liberty Mutual Fire policy did not so limit UIM coverage.[18]  In *Ezawa*, the court granted insured status to corporate employee family members on the authority of *Scott–Pontzer*.[19]

{¶ 14} Indiana argues in its first cross-assignment of error that because the boards that run education service centers are made up of individual persons who can occupy motor vehicles, there is no ambiguity as to who is an insured.[20]  However, our inquiry must necessarily focus upon the named insured, NCOESC, and whether an educational service center is an entity separate from its governing board.

{¶ 15} R.C. 3311.05 defines educational service center as follows:

"The territory within the territorial limits of a county, or the territory included in a district formed under section 3311.053 of the Revised Code, exclusive of the territory embraced in any city school district or exempted village school district, and excluding the territory detached therefrom for school purposes and including the territory attached thereto for school purposes constitutes an educational service center."

{¶ 16} R.C. 3311.055 provides that the term "school district" includes educational service centers.  Although run by a board comprised of individuals, educational service centers and school districts are independent entities, bodies corporate and politic, which are defined by and responsible for governmental

---

15.  Id. at 663, 710 N.E.2d 1116.

16.  Id. at 664, 710 N.E.2d 1116.

17.  Id. at 665, 710 N.E.2d 1116.

18.  Id. at 666, 710 N.E.2d 1116.

19.  *Ezawa*, 85 Ohio St.3d at 558.  See, also, *Rall v. Johnson*, Wyandot App. No. 16–02–13, 2003-Ohio-1373, 2003 WL 1390073, at ¶ 14–15.

20.  See R.C. 3311.053 and 3311.054.

services within a defined geographic area.[21] Therefore, because educational service centers, like corporations, can act only by and through real live persons, NCOESC's employees are insureds under NCOESC's policy with Indiana.[22] In addition, the Indiana policy definition of "you" indicates that "if you are an individual, any family member[s]" are insureds. Accordingly, we must conclude that Skylar was as an insured for purposes of UIM coverage.

## B. UIM Coverage—Covered Automobiles

{¶ 17} Having concluded that Skylar was an insured for purposes of UIM coverage, we must now determine whether the circumstances of this accident fall within other applicable coverage provisions.[23] Indiana argues that the policy only provides UIM coverage for insureds while occupying a covered automobile. Indiana contends that because Skylar was struck as a pedestrian, he does not qualify for UIM coverage. Appellant maintains that the policy does not require insureds to be occupying a covered automobile for purposes of UIM coverage. We agree.

{¶ 18} We have already found that Skylar qualified as an insured because his mother fell within the definition of "you" in paragraph one of the definition of "who is an insured," and paragraph two included family members of individual insureds. Although paragraph three of the definition additionally requires anyone else to be occupying a "covered auto" to qualify as an insured for purposes of UIM coverage, neither paragraph one nor paragraph two contain this further limitation. Examination of the remaining UIM provisions reveals no other language requiring insureds to be occupying a "covered auto." Thus, we find that Skylar qualifies as an insured and is not required to be occupying a covered automobile for purposes of UIM coverage.[24]

## C. Medical–Payments Coverage

{¶ 19} Turning to the Indiana medical-payments coverage, appellant argues that the medical-payments definition of who is an insured suffers from the same ambiguity as the UIM definition. Appellant maintains that *Scott–Pontzer*

---

**21.** Cf. *Personal Serv. Ins. Co. v. Bailey–Oney,* Marion App. No. 9–02–38, 2002-Ohio-6486, 2002 WL 31667238, at ¶ 12.

**22.** *Wilson v. Haimerl,* Madison App. No. CA2002–08–017, 2003-Ohio-1774, 2003 WL 1795600, at ¶ 10. See, also, *Finn,* supra.

**23.** Id. at ¶ 25.

**24.** See *Taylor v. Universal Underwriters Ins. Co.,* Franklin App. No. 01AP–922, 2003-Ohio-1446, 2003 WL 1495561, at ¶ 40.

requires that we find that Skylar qualifies for coverage under this provision. We disagree.

{¶ 20} The Ohio Supreme Court has held that, as opposed to UIM coverage, "[m]edical payments coverage in insurance contracts is neither mandated nor governed by statute. It is thus simply a matter of contract between the insurer and the insured." [25] "[I]nsurance contracts must be construed in accordance with the same rules as other written contracts."[26] "[T]he overriding concern of any court when construing a contract is to ascertain and effectuate the intent of the parties."[27] Thus, a contract should be construed in a manner to give effect to the intentions of the parties.[28] In this regard, insurance coverage should be determined by reasonably construing the insurance contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed."[29]

{¶ 21} As mentioned above, *Scott–Pontzer* involved a commercial insurance coverage policy issued to a corporation, Superior Dairy, Inc., by Liberty Mutual Fire Insurance Company ("Liberty Fire").[30] In addition to the liability policy provided by Liberty Fire, Superior Dairy also had in effect at the time of Scott–Pontzer's death an "umbrella/excess" insurance policy with Liberty Mutual Insurance Company ("Liberty Mutual"). The Liberty Fire policy contained an Ohio UIM coverage form that specifically defined who is an insured for UIM coverage as follows:

"1. You.

"2. If you are an individual, any family member.

"3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.

---

**25.** *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 10 OBR 497, 462 N.E.2d 403, at paragraph two of the syllabus. See, also, *Wayne Mut. Ins. Co. v. McCartney* (1996), 114 Ohio App.3d 129, 135, 682 N.E.2d 1061.

**26.** *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096.

**27.** *TRINOVA Corp. v. Pilkington Bros., P.L.C.* (1994), 70 Ohio St.3d 271, 638 N.E.2d 572; *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898.

**28.** *Hamilton Ins. Serv.*, 86 Ohio St.3d at 273, 714 N.E.2d 898.

**29.** *Dealers Dairy Products Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O.2d 424, 164 N.E.2d 745, paragraph one of the syllabus.

**30.** *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 661, 710 N.E.2d 1116.

"4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."

{¶ 22} Relying on the fact that the named insured was a corporation, the Ohio Supreme Court found the use of the term "you" in the definition to be ambiguous.[31] Noting that UIM coverage was designed to protect persons, not vehicles, the court reasoned that:

"[I]t would be reasonable to conclude that 'you,' while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless *unless the coverage extends to some person or persons*—including to the corporation's employees."[32]

{¶ 23} Confronted with what was perceived to be ambiguous policy language, the court "construed [the language] most favorably to the insured" and found that the plaintiff's husband was an insured under his employer's policy.[33]

{¶ 24} In contrast, the Liberty Mutual umbrella/excess policy failed to offer UIM coverage. Thus, unlike the Liberty Fire policy, the Liberty Mutual umbrella policy did not contain a UIM coverage form that specifically defined insureds for purposes of UIM coverage. Instead the Supreme Court applied the policy's liability-coverage definition, which expressly included employees as insureds, for purposes of UIM coverage. Although the Liberty Mutual policy did restrict coverage to employees acting within the scope of their employment, the Supreme Court manipulated the definition for purposes of UIM coverage, concluding:

"However, we have already found that Liberty Mutual had failed to offer underinsured motorist coverage through the umbrella policy issued to Superior Dairy. Thus, any language in the Liberty Mutual umbrella policy restricting insurance coverage was intended to apply solely to excess *liability* coverage and not for purposes of underinsured motorist coverage."[34]

---

31. Id.

32. (Emphasis added.) Id. at 664, 710 N.E.2d 1116.

33. Id. at 665, 710 N.E.2d 1116.

34. Id. at 666, 710 N.E.2d 1116, citing *Demetry v. Kim* (1991), 72 Ohio App.3d 692, 698, 595 N.E.2d 997, 1001.

{¶ 25} Although inexorably confined to this precedent with respect to mandated UIM coverage, we do not find this authority controlling with respect to medical-payments coverage.

{¶ 26} The Indiana policy defines who is an insured for medical-payments coverage as follows:

"B.  WHO IS AN INSURED

"1.  You while 'occupying' or, while a pedestrian, when struck by any 'auto.'

"2.  If you are an individual, any 'family member' while 'occupying' or, while a pedestrian, when struck by any 'auto.'

"3.  Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'  The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction."

{¶ 27} While the majority in *Scott–Pontzer* appears to have stopped at "you" in the first paragraph of the definition to produce the ambiguity upon which it relied for its pronouncement, we commit ourselves and are bound by overriding principles of contractual interpretation to read and consider the entirety of the definition in the context of the overall agreement.  Furthermore, while we construe the term "you" consistently within the UIM coverage form and for purposes of other provisions related thereto,[35] we are not bound to apply the manipulated UIM definition of "you" for purposes of other coverage contained within the policy.[36]

{¶ 28} Despite the corporation's inability to sustain bodily injury, we do not find the fact that the definition confirms that the named insured qualifies as an insured creates an inherent ambiguity.  As an initial matter, the definition is multifaceted and clearly indicates that the extent of coverage provided is conditional upon the nature of the named insured.  There is no ambiguity and no reason to resort to conjecture that "you" must include employees because an educational service center acts by and through its employees.  The definition clearly includes more than just the educational service center as insureds.  As in *Scott–Pontzer*, paragraph three extends coverage to "[a]nyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'"  Therefore, the inclusion of NCOESC as an insured is not meaningless because the definition

---

**35.**  See, e.g., *Niese v. Maag,* Putnam App. No. 12–02–06, 2002-Ohio-6851, 2002 WL 31778046, at ¶ 11–12, appeal allowed by (2003), 98 Ohio St.3d 1563, 2003-Ohio-2242, 787 N.E.2d 1229.

**36.**  We acknowledge that our determination with respect to the applicability of *Scott–Pontzer* to medical-payments coverage is in direct conflict with that of the Seventh Appellate District in *Headley v. Grange Grdn. Ins. Co.,* Mahoning App. No. 01–CA–130, 2003-Ohio-8, 2003 WL 40745, ¶ 75, cause dismissed by (2003), 99 Ohio St.3d 1447, 2003-Ohio-3318, 790 N.E.2d 1213.

expressly provides *"coverage extend[ing] to some person or persons"* [37] who are capable of sustaining bodily injury, including NCOESC employees. The policy definition of insured states that *"if"* you are an individual, then your family members are also insureds. "The ordinary and commonly understood meaning of individual is a single human being. This language is not susceptible of more than one interpretation. In this case, 'you' is an entity, not an individual." [38] Therefore, this subsection is inapplicable in this case. The corporation was certainly free to contract for coverage limited to individuals occupying company-owned vehicles. Accordingly, we are not willing to further erode the contractual nature of the relationship between an insurer and insured.[39]

{¶ 29} Even if we were to find this language to be ambiguous, we find no reasonable rationale supporting the extension of coverage to off-duty employees or their family members. As outlined by Justice Cook in her dissent to *Scott–Pontzer*:

> "[P]ublic policy would prevent Superior Dairy from validly insuring its business against damages to Scott–Pontzer's personal automobile, or insuring against Scott–Pontzer's liability arising outside the scope of Superior Dairy's business. As a matter of public policy, the validity of an insurance contract is dependent upon the insured having an insurable interest in the subject of the insurance. 1 Holmes, Appleman on Insurance 2d (1996) 555–557, Section 4.32. See, also, *id.* at 11–15, Section 1.3; *Phillips v. Cincinnati Ins. Co.* (1979), 60 Ohio St.2d 180, 181, 14 O.O.3d 413, 414, 398 N.E.2d 564, 565; *Great Am. Ins. Co. v. Curl* (App.1961), 88 Ohio Law Abs. 516, 517, 18 O.O.2d 481, 482, 181 N.E.2d 916, 918, citing 30 Ohio Jurisprudence 2d (1958) 305, Insurance, Section 305. An insurable interest exists when 'the insured derives pecuniary benefit or advantage by the preservation or continued existence of the property or will sustain pecuniary loss from its destruction.' 4 Appleman, Insurance Law and Practice (1969) 35, Section 2123; *Phillips,* 60 Ohio St.2d at 182, 14 O.O.3d at 415, 398 N.E.2d at 566. Here, Superior Dairy could incur no liability because of this employee's off-duty operation of his wife's car. Thus, no legitimate reason supports the judgment of the majority that this policy covers this employee's injuries in this accident; Scott–Pontzer is not an 'insured' under the commercial auto policy." [40]

---

37. (Emphasis added.) Id. at 664, 710 N.E.2d 1116.

38. Id. at 669, 710 N.E.2d 1116 (Lundberg Stratton, J., dissenting).

39. Id.

40. Id. at 667–668, 710 N.E.2d 1116 (Cook, J., dissenting; Moyer, C.J., concurring in dissent).

{¶ 30} Furthermore, words and phrases used in insurance policies " 'must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined.' "[41] "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." [42] Where contractual terms are undefined, uncertain, or ambiguous and are reasonably susceptible of more than one interpretation, parol evidence is admissible and should be examined in an effort to give effect to the parties' intentions.[43] See *Bowman v. Tax Comm.* (1939), 135 Ohio St. 295, 14 O.O. 189, 20 N.E.2d 916, wherein the Ohio Supreme Court stated:

"Extrinsic parol evidence is always admissible to give effect to a written instrument by applying it to its proper subject-matter by proving the circumstances under which it was made, thereby enabling the court to put itself in the place of the parties, with all the information possessed by them, the better to understand the terms employed in the contract, and to arrive at their intention."

{¶ 31} As reiterated by Justice Lundberg Stratton in her dissent to *Scott–Pontzer*: "Insurance coverage is determined by reasonably construing the contract 'in conformity with the *intention* of the parties as gathered from the ordinary and commonly understood meaning of the language employed.' " [44]

"A *commercial* policy cannot be reasonably construed to provide uninsured or underinsured motorist coverage in the case of the personal, nonemployment-related activities of an employee. Neither party to the contract intended to provide free uninsured motorist coverage for employees' personal, nonemployment-related activities, regardless of individual risk factors such as driving records, other applicable personal insurance coverage, or evidence of insurability. The insurance premium for such a policy would have to be adjusted to account for these additional risk factors. The company that provides, as a

---

**41.** *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 12, 540 N.E.2d 716, quoting *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 436 N.E.2d 1347.

**42.** *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus.

**43.** *Shifrin v. Forest City Ents., Inc.* (1992), 64 Ohio St.3d 635, 597 N.E.2d 499.

**44.** *Scott–Pontzer*, 85 Ohio St.3d at 669, 710 N.E.2d 1116 (Lundberg Stratton, J., dissenting), quoting *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380; *Dealers Dairy Products Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O.2d 424, 164 N.E.2d 745, paragraph one of the syllabus.

benefit of employment, automobile insurance for its employees' personal lives is rare.

"The majority reasons that the policy contains no language requiring that employees be acting within the scope of their employment in order to receive underinsured motorist coverage. However, it is inherent that a commercial policy, purchased by and written for a corporation, applies to the corporate entity and those acting within the scope of employment for that entity. There is no language in the policy that would create a presumption that it applies in situations other than events relating to Superior Dairy and its operation. Here, the decedent was engaged in a personal, nonemployment-related activity in a noncovered vehicle. Coverage under a commercial liability policy cannot be extended in these circumstances. Common sense alone dictates that this was an extension of coverage that the parties did not contemplate, bargain for, rate, or purchase. Is the extension of liability coverage next?" [45]

{¶ 32} Even abiding by the axiom that ambiguous policy language be construed strictly against the insurer, the insured's intent should serve to define the outermost limits to which coverage may be extended. It is apparent from the overall policy that the NCOESC's general intent was to purchase an automobile liability insurance policy to insure the NCOESC as a legal entity against liability arising from the use of vehicles owned or hired by NCOESC. The fact that the educational service center is the only named insured indicates the parties' intention to insure NCOESC, not the private lives and activities of its employees. Likewise, Indiana did not contemplate providing insurance coverage in circumstances unrelated to NCOESC. The parties to the contract did not intend, and the policy cannot reasonably be construed, to provide medical-payments coverage in the case of the personal, nonemployment-related activities of an employee's family member.

{¶ 33} Based on the foregoing analysis, appellants first assignment of error is sustained with regard to UIM coverage and overruled with regard to medical-payments coverage. In addition, Indiana's first cross-assignment of error is overruled.

## CROSS–ASSIGNMENT OF ERROR NO. II

"The Trial Court erred when it failed to find that Appellant's claims were barred by his failure to comply with the subrogation-related provisions contained in the Indiana Policy and by his failure to rebut the presumption of

---

**45.** *Scott–Pontzer,* 85 Ohio St.3d at 669–670, 710 N.E.2d 1116 (Lundberg Stratton, J., dissenting).

prejudice which accompanied such a failure and the Trial Court should have granted Indiana's motion for summary judgment on this issue as well."

{¶ 34} In its second cross-assignment of error, Indiana argues that the trial court erred when it failed to find that Indiana was prejudiced by the delayed notice of appellant's claim or that appellant breached applicable subrogation provisions. Noting that the trial court declined to address these issues, appellant avers that questions of material fact preclude entry of summary judgment as the Indiana notice and subrogation provisions. We agree.

{¶ 35} In *Ferrando v. Auto–Owners Mut. Ins. Co.,*[46] the Ohio Supreme Court stated as follows with respect to notice and subrogation provisions in UIM policies:

"1. When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary.

"2. When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary. (*Bogan v. Progressive Cas. Ins. Co.* [1988], 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus, overruled in part.)"

{¶ 36} *Ferrando* established a two-part test for evaluating whether prompt-notice and consent-to-settle (or other subrogation-related) provisions were breached:

"The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice 'within a reasonable time in light of all the surrounding circumstances.' *Ruby* [*v. Midwestern Indemn. Co.* (1988), 40 Ohio St.3d 159, 532 N.E.2d 730], syllabus. If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precluded. If the insurer did *not* receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a

---

46. *Ferrando v. Auto–Owners Mut. Ins. Co.,* 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, paragraphs one and two of the syllabus.

presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut.

"In cases involving the alleged breach of a consent-to-settle or other subrogation-related clause, the first step is to determine whether the provision actually was breached. If it was not, the inquiry is at an end, and UIM coverage must be provided. * * * If the consent-to-settle or other subrogation-related clause was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut."[47]

{¶ 37} As indicated in *Ferrando*, questions as to reasonableness of the notice provided, whether the consent-to-settle provisions were violated, and, if so, whether Indiana was prejudiced thereby, are issues of fact to be determined by the trial court. In light of our disposition of appellant's first assignment of error, we remand this cause to the trial court for further proceedings as to the parties' respective compliance with subject notice and subrogation provisions.

### ASSIGNMENT OF ERROR NO. II

"The Trial Court erred by finding that the underinsured motorists coverage was validly rejected under the Cincinnati Umbrella Policy."

### ASSIGNMENT OF ERROR NO. III

"The Trial Court erred to the prejudice of Plaintiff–Appellant by overruling his motion to strike the affidavits of Dave Ehrenfried and Mitch Felton and admitting extrinsic evidence to show that a valid rejection of UM/UIM coverage was made under the Cincinnati Umbrella Policy."

{¶ 38} The declarations page of Cincinnati's umbrella policy expressly states that UIM coverage is provided up to $1,000,000. The policy incorporates by reference the terms and conditions provided by the UIM provisions contained within the Cincinnati automobile liability policy. A general change endorsement issued May 23, 1996, attempts to delete excess UIM coverage from the umbrella policy and decrease the semi-annual premium by $164 effective April 1, 1996.

{¶ 39} Appellant challenges the validity of the rejection, arguing (1) that the rejection must be received prior to commencement of the policy period, (2) that the endorsement did not contain the elements defined in *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338, for a valid rejection, and (3) that the endorsement had not been properly executed because the policy

---

47. Id. at ¶ 90–91.

expressly required all changes to be signed by a duly authorized representative of Cincinnati. Cincinnati responds that (1) *Linko* was "inapplicable" because the record supports that Republic had previously accepted a valid offer at the inception of the policy and (2) the parties were free to modify the terms of the agreement under general contract principles. As support, Cincinnati submitted affidavits attesting that Republic sought and obtained a deletion of excess UIM coverage from the umbrella policy when the semi-annual premium came due on March 30, 1996. Appellant maintains that *Gyori* required the rejection to be in writing and that *Linko* precluded the introduction of extrinsic evidence to prove a knowing rejection.

{¶ 40} The statutory law in effect on the date of each new policy period governs the interpretation and application of the policy's terms.[48] The umbrella policy herein was issued on September 30, 1995. Accordingly, the S.B. 20 version of R.C. 3937.18, effective October 20, 1994 through September 7, 1997, controls that policy.

{¶ 41} In *Gyori v. Johnston Coca–Cola Bottling Group, Inc.,*[49] the Ohio Supreme Court held as follows with regard to the S.B. 20 version of R.C. 3937.18:

"1. There can be no rejection pursuant to R.C. 3937.18(C) absent a written offer of uninsured motorist coverage from the insurance provider.

"2. In order for a rejection of uninsured motorist coverage to be expressly and knowingly made, such rejection must be in writing and *must be received by the insurance company prior to the commencement of the policy year.*"[50]

{¶ 42} *Gyori* further concluded that "[t]he mandates of R.C. 3937.18 apply to providers of excess coverage as well as providers of primary liability coverage."[51] In *Schumacher v. Kreiner,*[52] the court reaffirmed its holding in *Gyori,* stating that "[w]hen UM coverage is not part of a policy, such coverage is created by operation of law unless the insurer expressly offers it in writing and the insured expressly rejects it in writing *before the time that the coverage begins.*"[53] R.C. 3937.18(C) was subsequently amended by H.B. No. 261 to provide that "[a]

48. *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 250, 725 N.E.2d 261, citing *Ross v. Farmers Ins. Group* (1998), 82 Ohio St.3d 281, 287, 695 N.E.2d 732.

49. *Gyori v. Johnston Coca–Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824.

50. (Emphasis added.) Id. at paragraphs one and two of the syllabus.

51. Id. at 568, 669 N.E.2d 824.

52. *Schumacher v. Kreiner* (2000), 88 Ohio St.3d 358, 359–360, 725 N.E.2d 1138.

53. (Emphasis added.) Id.

named insured's \* \* \* written, signed rejection of [UIM coverage] as offered under division (A) of this section \* \* \* *shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section,* and shall be binding on all other named insureds \* \* \*."[54] Although H.B. No. 261 adopted *Gyori's* requirement that rejections be in writing, it discarded the proposition that parties were precluded from executing mid-term rejections.

{¶ 43} Unfortunately, because the umbrella policy was issued on September 30, 1995, we are bound by authority interpreting the S.B. 20 version of R.C. 3937.18. According to *Gyori* and *Schumacher,* we are required to conclude that the UIM rejection forms that were executed following the commencement of the policy year were an untimely and ineffective attempt to reject UIM coverage for that policy period. Accordingly, appellant's second assignment of error is sustained. Therefore, appellant's third assignment of error is moot.

{¶ 44} As a final matter, the record indicates that the trial court reviewed the notice and subrogation provisions with respect to the Cincinnati automobile liability policy's UIM provisions. However, it appears that notice and subrogation issues with respect to the Cincinnati umbrella policy remain unresolved and must be addressed upon remand.

{¶ 45} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of the Seneca County Common Pleas Court is hereby reversed and the cause is remanded for further proceedings in accordance with this opinion.

<div style="text-align:right">

Judgment reversed
and cause remanded.

</div>

Shaw and Cupp, JJ., concur.

---

54. (Emphasis added.) Id.